DOROTHY M. FAULKENBURY, ON BEHALF OF HERSELF AND ALL OTHERS SIMILARLY SITUATED, PLAINTIFFS v. TEACHERS' AND STATE EMPLOYEES' RETIREMENT SYSTEM OF NORTH CAROLINA, A CORPORATION; BOARD OF TRUSTEES AND STATE EMPLOYEES' RETIREMENT SYSTEM OF NORTH CAROLINA, A BODY POLITIC AND CORPORATE; DENNIS DUCKER, DIRECTOR OF THE RETIREMENT SYSTEM DIVISIONS AND DEPUTY TREASURER OF THE STATE OF NORTH CAROLINA (IN HIS OFFICIAL CAPACITY); HARLAN E. BOYLES, TREASURER OF THE STATE OF NORTH CAROLINA AND CHAIRMAN OF THE BOARD OF TRUSTEES TEACHERS' AND STATE EMPLOYEES' RETIREMENT SYSTEM OF NORTH CAROLINA (IN HIS OFFICIAL CAPACITY); AND STATE OF NORTH CAROLINA, DEFENDANTS

WILLIAM H. WOODARD, ON BEHALF OF HIMSELF AND ALL OTHERS SIMILARLY SITUATED, PLAINTIFFS v. NORTH CAROLINA LOCAL GOVERNMENTAL EMPLOYEES' RETIREMENT SYSTEM, A CORPORATION; BOARD OF TRUSTEES OF THE NORTH CAROLINA LOCAL GOVERNMENTAL EMPLOYEES' RETIREMENT SYSTEM, A BODY POLITIC AND CORPORATE; DENNIS DUCKER, DIRECTOR OF THE RETIREMENT SYSTEMS DIVISION AND DEPUTY TREASURER OF THE STATE OF NORTH CAROLINA (IN HIS OFFICIAL CAPACITY); HARLAN E. BOYLES, TREASURER OF THE STATE OF NORTH CAROLINA AND CHAIRMAN OF THE BOARD OF TRUSTEES OF THE NORTH CAROLINA LOCAL GOVERNMENTAL EMPLOYEES' RETIREMENT SYSTEM (IN HIS OFFICIAL CAPACITY); STATE OF NORTH CAROLINA, DEFENDANTS

BONNIE G. PEELE, ON BEHALF OF HERSELF AND ALL OTHERS SIMILARLY SITUATED, PLAINTIFFS v. TEACHERS' AND STATE EMPLOYEES' RETIREMENT SYSTEM OF NORTH CAROLINA, A CORPORATION; BOARD OF TRUSTEES TEACHERS' AND STATE EMPLOYEES' SYSTEM OF NORTH CAROLINA, A BODY POLITIC AND CORPORATE; DENNIS DUCKER, DIRECTOR OF THE RETIREMENT SYSTEM DIVISIONS AND DEPUTY TREASURER OF THE STATE OF NORTH CAROLINA (IN HIS OFFICIAL CAPACITY); HARLAN E. BOYLES, TREASURER OF THE STATE OF NORTH CAROLINA AND CHAIRMAN OF

**FAULKENBURY v. TEACHERS' AND STATE EMPLOYEES' RET. SYS.**

[345 N.C. 683 (1997)]

THE BOARD OF TRUSTEES TEACHERS' AND STATE EMPLOYEES' RETIREMENT SYSTEM OF NORTH CAROLINA, (IN HIS OFFICIAL CAPACITY); AND STATE OF NORTH CAROLINA, DEFENDANTS

No. 109PA96

(Filed April 11 1997)

**1. Retirement § 6 (NCI4th)— disability benefits—change after vesting, before disability—violation of Contract Clause**

A contract existed between plaintiffs and the State where plaintiffs were employed for more than five years on 1 July 1982 and their retirement and disability benefits were vested at that time; the method of calculating disability benefits was changed on 1 July 1982; each of the plaintiffs became disabled after 1 July 1982 and received benefits which were reduced from what they would have received if there had been no change in the law; the plaintiffs filed claims including the impairment of contract in violation of Article I, Section 10 of the Constitution of the United States; the claims were certified as class actions; defendants' motions to dismiss were denied; the Court of Appeals ordered that all claims except the claim for impairment of contract be dismissed; and the cases were returned to the superior court, which held that the Contract Clause had been violated. When determining whether there was a violation of the Contract Clause, it must first be determined whether there was a contract, then whether the contract was impaired, then whether the impairment was reasonable and necessary to serve an important public purpose. It has been held in *Simpson v. N.C. Local Gov't Employees' Retirement Sys.*, 88 N.C. App. 218, *aff'd per curiam*, 323 N.C. 362, that the relation between government employees and the government is contractual and *Griffin v. Board of Comm'rs*, 84 N.C. App. 443, is overruled to the extent that it is inconsistent with *Simpson* and with the Court of Appeals decision in this case. At the time the plaintiffs started working for the state or local government, the statutes provided what the plaintiffs' compensation in the way of retirement benefits would be; plaintiffs accepted these offers when they took the jobs; and this created a contract. The General Assembly did not reserve the right to amend the retirement plans by N.C.G.S. § 128-38 and N.C.G.S. § 135-18.4, which only allow amendments to coordinate the retirement system with the Social Security Act, and the argument

[345 N.C. 683 (1997)]

that the General Assembly did not reserve the right to change the retirement benefits because it considered them to be gratuities was refuted by *Bridges v. City of Charlotte*, 221 N.C. 472. Although defendants argue that there is nothing in the statutes that shows that the General Assembly intended to offer the benefits as part of a contract, enacting laws providing benefits to people to be employed by state and local governments who meet certain conditions could reasonably be considered by those persons as offers to guarantee the benefits if the conditions were fulfilled. The plaintiffs fulfilled the condition even though they were not disabled on 1 July 1982; they were promised that they would receive certain benefits if they became disabled if they had worked for five years and they met this condition. Furthermore, equitable distribution has no application in this case, the power to determine the amount of pension payments is not a part of the essential attributes of sovereign power, plaintiffs expected to receive what they were promised at the time of vesting even if they did not know the exact amount, the retirement benefits were an integral part of the contracts whatever the central undertaking, and members of the classes represented by plaintiffs suffered impairments of their contracts when they received the same treatment as the named plaintiffs.

**Am Jur 2d, Pensions and Retirement Funds §§ 291-342, 1708, 1711-1737.**

**2. Retirement § 6 (NCI4th)— state and local employees— retirement disability—change in calculation—impairment of contract**

In an action arising from changing the way disability benefits are calculated after plaintiffs became vested in the system but before they became disabled, plaintiffs were entitled to have their rights calculated on 1 July 1982, when the change was made, even though some members of the classes will receive as much or more under the revised plans. The state and local governments on that date offered certain things to plaintiffs, which they accepted by continuing in their employment.

**Am Jur 2d, Pensions and Retirement Funds §§ 291-342, 1708, 1711-1737.**

**3. Retirement § 6 (NCI4th)— state and local employees—disability retirement—change in calculation—no important public purpose**

Although defendants argue that the changes in the calculation of disability retirement benefits for state and local government employees were reasonable and necessary to accomplish an important public purpose in that a disability retirement feature should not encourage people to take early retirement and these plans have developed to the point that some members can receive more by taking disability than by continuing to work, the development of a pension plan in unanticipated ways is not an important public purpose which would justify the impairment of a contract. The merits of the two plans are not passed upon.

**Am Jur 2d, Pensions and Retirement Funds §§ 291-342, 1708, 1711-1737.**

**4. Retirement § 6 (NCI4th)— state and local employees—disability retirement—change in calculation—statute of limitations**

The trial court did not err in an action arising from a change in the way disability benefits were calculated for state and local government employees by holding that the applicable statutes of limitations are N.C.G.S. § 128-27(i) and N.C.G.S. § 135-5(n). Although defendants say the deficiencies contemplated by those two sections are due to a mathematical error or a mistake in cutting a check and that any wrong was not continuing, the reductions in payments under the new systems were deficiencies which have continued to the present time. N.C.G.S. § 128-27(i) and N.C.G.S. § 135-5(n) apply and allow plaintiffs to pursue claims for underpayments for three years before they commenced actions.

**Am Jur 2d, Pensions and Retirement Funds §§ 291-342, 1708, 1711-1737.**

**5. Retirement § 6 (NCI4th)— state and local employees—disability retirement—change in calculation—recovery of actuarial equivalent**

The trial court did not err in an action arising from a change in the way disability benefits were calculated by allowing plaintiffs to recover the actuarial equivalent of the underpayments. Although defendants argue that these sections apply only if there is a change or error in the records, it was the intent of the General

Assembly that, if there had been an underpayment of a pension compensation, it would be paid at the actuarial value.

**Am Jur 2d, Pensions and Retirement Funds §§ 291-342, 1708, 1711-1737.**

**6. Retirement § 6 (NCI4th)— state and local employees—disability retirement—change in calculation—interest on underpayments**

It was not error to require state and local governments to pay interest on underpayments resulting from a change in the way disability benefits are calculated. Insofar as state and local governments have sovereign immunity, it was waived by N.C.G.S. § 135-1(2) and N.C.G.S. § 128-21(2), which provide that actuarial value includes interest. There is no double recovery.

**Am Jur 2d, Pensions and Retirement Funds §§ 291-342, 1708, 1711-1737.**

**7. Parties § 70 (NCI4th)— state and local employees—change in disability calculation—class action— deficiencies paid into common fund**

In an action arising from a change in the way disability compensation was calculated for local and state government employees, the trial court did not err by ordering that defendants pay into a common fund all deficiencies which occurred within three years of the dates the class actions were filed. Although defendants contend that plaintiffs' claims consist of individual benefit payments rather than for group damages, the purpose of the common fund doctrine is to allow the court to award attorney fees to a litigant who has gained an advantage for other persons similarly situated, which the plaintiffs have done in this case.

**Am Jur 2d, Parties §§ 43 et seq.**

**8. Parties § 78 (NCI4th)— state and local employees—change in disability calculation—class certification**

The trial court did not err by granting plaintiffs' motion for class certification and by denying defendants' motion for decertification after trial. If the prerequisites are established, whether the matter may proceed as a class action is within the discretion of the trial court. Each of the parties had a claim based on what he or she contends is underpayment of retirement benefits which

predominates over issues affecting only individual class members. Although there are collateral issues, the predominant issue is how much the parties' retirement benefits were reduced by an unconstitutional change in the law.

**Am Jur 2d, Parties §§ 50 et seq.**

**9. Parties § 78 (NCI4th)— state and local employees—change in disability calculation—class certification—future retirees excluded**

The trial court did not abuse its discretion in an action arising from a change in the way disability benefits are calculated by refusing to extend class certifications to members of two retirement systems who become disabled in the future. There is no reason to believe that defendants will not follow the law as it is delineated in this opinion and the trial court did not abuse its discretion by refusing to certify a class whose members are unknown at this time.

**Am Jur 2d, Parties §§ 50 et seq.**

On discretionary review pursuant to N.C.G.S. § 7A-31(b) prior to a determination by the Court of Appeals of a judgment entered in plaintiffs' favor by Cashwell, J., on 21 July 1995, in these three cases consolidated for trial in Superior Court, Wake County. Heard in the Supreme Court 12 September 1996.

This case involves three actions challenging the way disability benefits are calculated under the Teachers' and State Employees' Retirement System of North Carolina and the North Carolina Local Governmental Employees' Retirement System. Dorothy Faulkenbury and Bonnie G. Peele alleged that they had been employed as public school teachers for more than five years on 1 July 1982 and that their retirement and disability benefits under the Teachers' and State Employees' Retirement System were vested at that time. William H. Woodard alleged that he had been employed for five years by the City of Greensboro Police Department on 1 July 1982 and that his retirement and disability benefits under the Local Governmental Employees' Retirement System had vested at that time. On 1 July 1982, the method of calculating disability benefits was changed so that the three plaintiffs received less in pension payments than they would have received if they had retired for disability prior to that time. Each of the plaintiffs became disabled after 1 July 1982 and

received benefits which were reduced from what they would have received if there had been no change in the law on 1 July 1982. Ms. Peele also complained of a change in retirement benefits that occurred as a result of a 1988 amendment to the statute. Mr. Woodard died after the commencement of this action. His widow was substituted for him as a plaintiff.

All of the plaintiffs alleged that the actions of the State in reducing their benefits (1) deprived them of due process of law, in violation of the Fourteenth Amendment to the Constitution of the United States and 42 U.S.C. § 1983; (2) deprived them of the equal protection of the law, in violation of the Fourteenth Amendment to the Constitution of the United States and 42 U.S.C. § 1983; (3) impaired the obligations of a contract, in violation of Article I, Section 10 of the Constitution of the United States; and (4) deprived them of the fruits of their own labor, due process of law, and the equal protection of the law, in violation of Article I, Sections 1 and 19 of the North Carolina Constitution. The plaintiffs also alleged that the defendants have breached a fiduciary duty owed to plaintiffs and that the plaintiffs are entitled to have a constructive trust imposed on all funds to which they are entitled.

On 28 June 1991, the *Faulkenbury* and *Woodard* claims were certified as class actions. On 2 December 1993, the *Peele* claim was certified as a class action.

The defendants' motions to dismiss all the claims of Faulkenbury and Woodard were denied by the superior court. The Court of Appeals reversed in part and ordered that all claims except the claim for the unconstitutional impairment of a contract be dismissed; there was a dissent in both cases, and this Court affirmed. *Woodard v. N.C. Local Governmental Employees' Retirement Sys.*, 108 N.C. App. 378, 424 S.E.2d 431, *aff'd*, 335 N.C. 161, 435 S.E.2d 770 (1993); *Faulkenbury v. Teachers' & State Employees' Retirement Sys.*, 108 N.C. App. 357, 424 S.E.2d 420, *aff'd*, 335 N.C. 158, 436 S.E.2d 821 (1993).

The *Faulkenbury* and *Woodard* cases were returned to the superior court and joined with the *Peele* case for trial. The only issue at the trial was whether the change in the calculation of the plaintiffs' disability benefits impaired the obligations of a contract in violation of Article I, Section 10 of the Constitution of the United States. The superior court held that the Contract Clause had been violated.

*Womble Carlyle Sandridge & Rice, by G. Eugene Boyce; Susan McFarlane; and Marvin Schiller for plaintiff-appellants and -appellees.*

*Michael F. Easley, Attorney General, by Edwin M. Speas, Jr., Senior Deputy Attorney General, and Norma S. Harrell, and Tiare Bowe Smiley, Special Deputy Attorneys General, for defendant-appellants and -appellees.*

WEBB, Justice.

[1] The principal question raised by this appeal is whether a change in the law, which reduced plaintiffs' disability retirement payments, violates Article I, Section 10 of the Constitution of the United States, which provides in part: "No state shall . . . pass any . . . law impairing the obligations of contracts." U.S. Const. art. I, § 10. In order to resolve this question, we must first determine whether there was a contract. If there was a contract, we must determine whether the contract was impaired. Finally, we must determine whether the impairment was reasonable and necessary to serve an important public purpose. *United States Trust Co. v. New Jersey,* 431 U.S. 1, 52 L. Ed. 2d 92 (1977).

The Court of Appeals held and we affirmed in *Simpson v. N.C. Local Gov't Employees' Retirement Sys.,* 88 N.C. App. 218, 363 S.E.2d 90 (1987), *aff'd per curiam,* 323 N.C. 362, 372 S.E.2d 559 (1988), a case almost on all fours with this case, that the relation between the employees and the governmental units was contractual. *Simpson* governs this case. At the time the plaintiffs' rights to pensions became vested, the law provided that they would have disability retirement benefits calculated in a certain way. These were rights that they had earned and that may not be taken from them by legislative action.

The defendants argue *Simpson* is wrong and should be overruled. They say this is so because the statutes upon which the plaintiffs rely are not promises, but only state a policy which the General Assembly may change. We believe that a better analysis is that at the time the plaintiffs started working for the state or local government, the statutes provided what the plaintiffs' compensation in the way of retirement benefits would be. The plaintiffs accepted these offers when they took the jobs. This created a contract.

FAULKENBURY v. TEACHERS' AND STATE EMPLOYEES' RET. SYS.

[345 N.C. 683 (1997)]

The defendants next contend that the General Assembly reserved the right to amend the retirement plans for state and local government employees by N.C.G.S. §§ 128-38 and 135-18.4, which provide:

The General Assembly reserves the right at any time and from time to time, and if deemed necessary or appropriate by said General Assembly in order to coordinate with any changes in the benefit and other provisions of the Social Security Act made after January 1, 1955, to modify or amend in whole or in part any or all of the provisions of the . . . Retirement System.

N.C.G.S. § 128-38 (1995) (local government employees); N.C.G.S. § 135-18.4 (1995) (state government employees).

The two sections only allow amendments to coordinate the retirement system with the Social Security Act. They have no application to this case.

The defendants, citing cases from other states and legal articles, say the General Assembly did not originally reserve the right to change the retirement benefits because at the time the plans were created, the General Assembly considered retirement benefits to be gratuities. We believe this argument is refuted by the first case in this state, *Bridges v. City of Charlotte*, 221 N.C. 472, 20 S.E.2d 825 (1942), in which the constitutionality of the Teachers' and State Employees' Retirement Act was challenged. We held that pensions for teachers and state employees were delayed salaries. If they were gratuities, we said, they would run afoul of proscription of special emoluments as provided in our state Constitution.

The defendants argue that there is nothing in the statutes that shows the General Assembly intended to offer the benefits as a part of a contract, and without such an intent, there can be no contract. We believe that when the General Assembly enacted laws which provided for certain benefits to those persons who were to be employed by the state and local governments and who fulfilled certain conditions, this could reasonably be considered by those persons as offers by the state or local government to guarantee the benefits if those persons fulfilled the conditions. When they did so, the contract was formed. For a discussion on the objective and subjective theories in determining the intent to form a contract, see E. Allan Farnsworth, *Contracts* § 3.6, at 113 (1st ed. 1982).

The defendants contend that the plaintiffs do not have vested rights to disability compensation at the pre-1 July 1982 level because

they were not disabled on that date. They say that the plaintiffs' rights to disability retirement benefits did not vest until the plaintiffs were disabled, at which time the benefits had been reduced. We believe a better analysis is that, pursuant to the plaintiffs' contracts, they were promised that if they worked for five years, they would receive certain benefits if they became disabled. The plaintiffs fulfilled this condition. At that time, the plaintiffs' rights to benefits in case they were disabled became vested. The defendants could not then reduce the benefits.

The defendants argue that *Griffin v. Board of Comm'rs*, 84 N.C. App. 443, 352 S.E.2d 882 (1987), is inconsistent with *Simpson* and the Court of Appeals' opinion in this case. We agree. So far as *Griffin* is inconsistent with this case, it is overruled.

The defendants next argue that *Simpson* has never been considered in equitable distribution cases when determining whether pensions are vested, and pensions are thus marital property. Equitable distribution has no application to this case.

The defendants contend that the power to determine the amount of pension payments is a part of the essential attributes of sovereign power necessary to safeguard the vital interests of the people. These are powers of a state which cannot be "bargained away," say the defendants. A state can normally enter into a financial obligation. *United States Trust Co.*, 431 U.S. at 21, 52 L. Ed. 2d at 109. The promise to pay pensions does not bargain away a power of the state or local government necessary to protect the vital interests of the people.

The defendants next argue that assuming there were contractual relationships in regard to the pension rights of the plaintiffs, there has not been a showing that the plaintiffs' contractual rights have been impaired. The defendants say this is so because the plaintiffs have received what they reasonably expected from the contracts. *Energy Reserves Group, Inc. v. Kansas Power & Light Co.*, 459 U.S. 400, 74 L. Ed. 2d 569 (1983). The defendants say the evidence showed that the plaintiffs did not read the handbooks provided them, which explained their pension rights, and made no inquiries about these rights until they retired. For this reason, say the defendants, the plaintiffs had no particular expectations in regard to disability payments except that they would receive what the pension plan provided for them. The plaintiffs expected to receive what they were promised at the time of vesting. They may not have known the exact amount, but

this was their expectation. The contract was substantially impaired when the promised amount was taken from them.

The defendants next argue that the retirement benefits were not the central undertakings of the contracts. They say that the service-retirement benefits were what was bargained for by the plaintiffs, and because the plaintiffs are receiving the equivalent of service-retirement benefits, their rights under the contracts have not been impaired. We disagree. Whatever may have been the central undertaking of the contracts, the retirement benefits were an integral part. The plaintiffs are entitled to have this part enforced.

[2] The defendants next argue that there was no proof that any members of the classes represented by the plaintiffs suffered any impairment of their contracts. We can assume they did so when they received the same treatment as the named plaintiffs.

The defendants next contend that plaintiffs Faulkenbury and Woodard argue that their contract rights arose at the time their rights to pensions were vested. The plaintiffs were vested before 1 July 1982, and, say the defendants, their rights must be determined as of those dates. If this is so, the plaintiffs' rights have not been impaired because they would have received less on the dates of vesting than they would have received on 1 July 1982. Whenever the plaintiffs' pension rights vested, they were entitled to have their rights calculated on 1 July 1982. The state and local governments on that date offered certain things to the plaintiffs, which the plaintiffs accepted by continuing in their employment.

The defendants next contend that when social security payments, cost of living increases, no retirement deductions, and no social security deductions are considered, the plaintiffs are receiving more than any reasonable expectation they had for disability benefits. We disagree. The plaintiffs are entitled to what they bargained for when they accepted employment with the state and local governments. They should not be required to accept a reduction in benefits for other benefits they have received. Nor does it matter that some members of the classes will receive as much or more under the revised plans. They are entitled to receive that for which they bargained.

[3] The defendants next argue that the changes in disability retirement benefits were reasonable and necessary to accomplish an important public purpose. They say that a proper consideration in designing a pension plan is that a disability retirement feature of the

plan should not encourage people to take early retirement. The retirement plans under consideration here, say the defendants, have developed to the point that some members of the plan can receive more by taking disability retirement than by continuing to work. The defendants argue that the correct operation of the plan is an important public purpose, which justifies the impairment of the contract. We do not believe that because the pension plan has developed in some ways that were not anticipated when the contract was made, the state or local government is justified in abrogating it. This is not the important public purpose envisioned which justifies the impairment of a contract.

The defendants make an extensive argument in regard to what they say is the superiority of the new plan over the old. We do not pass on the merits of the two plans. We simply hold that the state and local governments cannot impair their contracts with the plaintiffs.

The defendants assigned error to the superior court's holdings that the plaintiffs had been deprived of the equal protection of the law as guaranteed by the Fourteenth Amendment to the Constitution of the United States; that the plaintiffs' property rights had been violated as guaranteed by Article I, Sections 1 and 19 of the North Carolina Constitution; and that the plaintiffs' rights under Article I, Section 5 of the North Carolina Constitution had been violated. Our holding that the Contract Clause has been violated is sufficient to determine the case. We do not consider these assignments of error.

[4] The defendants next argue that the superior court was in error in holding that the applicable statutes of limitations are found in N.C.G.S. § 128-27(i) and N.C.G.S. § 135-5(n). These two sections contain identical provisions, which provide:

> No action shall be commenced against the State or the Retirement System by any retired member or beneficiary respecting any deficiency in the payment of benefits more than three years after such deficient payment was made, and no action shall be commenced by the State or the Retirement System against any retired member or former member or beneficiary respecting any overpayment of benefits or contributions more than three years after such overpayment was made.

N.C.G.S. § 128-27(i) (1995) (local government employees); N.C.G.S. § 135-5(n) (1995) (state government employees). The defendants say

the deficiencies contemplated by the two sections are not what we have in this case. They say that a deficiency is a payment which is deficient because of a mathematical error or a mistake in cutting a check. They say that the plaintiffs are not suffering from a continuing wrong. If there was a wrong, say the defendants, it occurred when the plaintiffs retired and were paid less than they would have been paid under the system which had been in effect. This was not a continuing wrong, say the defendants, and the statute of limitations contained at N.C.G.S. § 1-52(5) bars all the plaintiffs who have retired because of disability more than three years before they began an action to challenge the changes in disability retirement.

We do not read this section as do the defendants. We believe that the reductions in payments under the new systems were deficiencies which have continued to the present time. N.C.G.S. § 128-27(i) and N.C.G.S. § 135-5(n) apply in this case, and they allow the plaintiffs to pursue claims for underpayments for three years before they commenced actions.

[5] The defendants next say it was error for the superior court to allow the plaintiffs to recover the actuarial equivalent of the underpayments. The court did this pursuant to N.C.G.S. § 128-32 and N.C.G.S. § 135-10, which have virtually identical provisions as follows:

> Should any change or error in the records result in any member or beneficiary receiving from the Retirement System more or less than he would have been entitled to receive had the records been correct, the Board of Trustees shall correct such error, and as far as practicable, shall adjust the payment in such a manner that the actuarial equivalent of the benefit to which such member or beneficiary was correctly entitled shall be paid.

N.C.G.S. § 128-32 (1995) (local government employees); N.C.G.S. § 135-10 (1995) (state government employees). The defendants argue that these sections apply only if there is a change or error in the records and that there is neither in this case. For this reason, say the defendants, the plaintiffs are not entitled to the actuarial equivalents of the underpayments.

We believe these sections show it was the intent of the General Assembly that if there was an underpayment of a pension compensation, it would be paid at the actuarial value. It was not error for the superior court to require such payment.

FAULKENBURY v. TEACHERS' AND STATE EMPLOYEES' RET. SYS.

[345 N.C. 683 (1997)]

**[6]** The defendants next argue that it was error to require them to pay interest on the underpayments. They say that the state and local governments have sovereign immunity which prevents them from being liable for interest. *Attorney General v. Cape Fear Navigation Co.*, 37 N.C. 444 (1843). We disagree. Insofar as the state and local governments have sovereign immunity, it was waived by N.C.G.S. § 135-1(2), which defines actuarial equivalent as "a benefit of equal value when computed upon the basis of such mortality tables as shall be adopted by the Board of Trustees, and regular interest," N.C.G.S. § 135-1(2) (1995), and by N.C.G.S. § 128-21(2), which provides, " 'Actuarial equivalent' shall mean a benefit of equal value when computed at regular interest upon the basis of such mortality tables as shall be adopted by the Board of Trustees," N.C.G.S. § 128-21(2) (1995). These sections plainly say that actuarial value includes interest. The plaintiffs are entitled to the actuarial value of underpayments, which includes interest.

The defendants next argue that the remedy fashioned by the superior court is too broad. In a conclusion of law, the court held that the plaintiffs are entitled to interest and the actuarial equivalent of their underpayments in accordance with N.C.G.S. § 135-10 and N.C.G.S. § 128-32. The court also held that pursuant to N.C.G.S. § 135-5(n) and N.C.G.S. § 128-27(i), the plaintiffs "are entitled to receive past underpayments, the actuarial equivalent thereof and interest."

The defendants say that allowing recompense under all these sections gives the plaintiffs double recovery. They say that the payment of underpayments at their actuarial equivalent will fully compensate the plaintiffs and that the plaintiffs should not be paid interest. We disagree.

In allowing interest, the court was following the definition of actuarial equivalent prescribed by N.C.G.S. § 128-21(2) and N.C.G.S. § 135-1(2). There is no double recovery.

**[7]** The defendants next argue that it was error for the court to order that the defendants pay into a common fund all past deficiencies in payments of monthly benefits which occurred within three years of the dates the class actions were filed. The common-fund doctrine is based on an exception to the general rule that attorneys' fees may not be awarded to the prevailing party without statutory authority. The doctrine allows a court in its equitable jurisdiction to order attorneys' fees "to a litigant who at his own expense has maintained a success-

ful suit for the preservation, protection, or increase of a common fund or of common property, or who has created at his own expense or brought into court a fund which others may share with him." *Horner v. Chamber of Commerce*, 236 N.C. 96, 97-98, 72 S.E.2d 21, 22 (1952); *see also Raleigh-Durham Airport Auth. v. Howard*, 88 N.C. App. 207, 363 S.E.2d 184 (1987), *disc. rev. denied*, 322 N.C. 113, 367 S.E.2d 916 (1988).

The defendants contend this is not a case in which the common-fund doctrine should be applied. They say that the plaintiffs' claims consist of individual benefit payments and are not for group damages in which there can be a lump-sum award. We believe the defendants have misapprehended the common-fund doctrine. Although the words "common fund" are used, the purpose of the doctrine is to allow the court to award attorneys' fees to a litigant who has gained an advantage for other persons similarly situated. The plaintiffs have done so in this case, and the court properly ordered the defendants to pay into the common-fund.

[8] The defendants next argue that it was error for the court to grant the plaintiffs' motion for class certification and to deny the defendants' motion for decertification after the trial. N.C.G.S. § 1A-1, Rule 23(a) provides for class actions. In *Crow v. Citicorp Acceptance Co.*, 319 N.C. 274, 354 S.E.2d 459 (1987), we held "that a 'class' exists under Rule 23 when the named and unnamed members each have an interest in either the same issue of law or of fact, and that issue predominates over issues affecting only individual class members." *Id.* at 280, 354 S.E.2d at 464. Other prerequisites for bringing a class action are that (1) the named representatives must establish that they will fairly and adequately represent the interests of all members of the class; (2) there must be no conflict of interest between the named representatives and members of the class; (3) the named representatives must have a genuine personal interest, not a mere technical interest, in the outcome of the case; (4) class representatives within this jurisdiction will adequately represent members outside the state; (5) class members are so numerous that it is impractical to bring them all before the court; and (6) adequate notice must be given to all members of the class. If the prerequisites for a class action are established, it is within the discretion of the trial court as to whether the matter may proceed as a class action. *Id.* at 282-84, 354 S.E.2d at 465-66.

The court found facts in each case which justified the establishment of a class action. It ordered that a class be established in each

case. The court designated as members of the class all persons who were receiving disability benefits in a lesser amount than they would have received had the law not been changed; persons who retired on service retirement who could have retired on disability retirement at higher rates if the law had not been changed; living beneficiaries of deceased disability retirees who if living would receive less in retirement payments than they would have received if the law had not been changed; all living heirs, beneficiaries, or personal representatives of any estate of one who was receiving less as a disability retiree than he would have received if the law had not been changed and who had not selected a designated survivor beneficiary; and all living heirs, beneficiaries, or personal representatives of the estate of a deceased survivor beneficiary who was receiving benefits pursuant to the election of an option by a deceased disability retiree.

Each of the parties had a claim based on what he or she contends is underpayment of retirement benefits. This claim predominates over issues affecting only individual class members in this case. This establishes a class.

The defendants contend the prerequisites to bringing a class action do not exist in this case. They say there are serious questions concerning the standing and adequacy of the named plaintiffs to represent the class. They say Faulkenbury and Woodard's claims are barred by the statute of limitations, which means they cannot represent their classes. We have held their claims are not barred by the statute of limitations.

The defendants argue that the members of the classes who are not receiving disability retirement, such as the heirs of deceased retirees, have different interests from the named plaintiffs. The interest of the plaintiffs named and unnamed is to recover what they can for what they contend is underpayment of retirement benefits. This is an issue which defines the class.

Finally, the defendants argue that the members of the potential class will receive recoveries in different amounts. For this reason, say the defendants, the class members' claims must be examined to determine what offsetting advantages cancel out disadvantages, what difference in benefits might exist, and whether the change in benefits changes the central understanding of the parties. All these are collateral issues in this case. The predominate issue is how much the parties' retirement benefits were reduced by an unconstitutional change in the law. This issue defines the class.

**[9]** The plaintiffs appeal from the court's refusal to extend the class certifications to members of the two retirement systems who become disabled in the future. They say that unless they are included, they will receive less when they retire on disability than will the members of the classes certified in this case.

The trial court has broad discretion in determining whether a case should proceed as a class action. *Id.* at 284, 354 S.E.2d at 466. We have no reason to believe the defendants will not follow the law as we have delineated it in this opinion in pension payments to future disability retirees. We cannot hold that the court abused its discretion in refusing to certify a class whose members are unknown at this time.

The judgment of the superior court is affirmed, and the case is remanded to the Superior Court, Wake County, for further proceedings.

AFFIRMED.