CLAYTON LEE PROCTOR, JR., on behalf of himself and all others similarly situated, Plaintiff,
v.
LOCAL GOVERNMENT EMPLOYEES' RETIREMENT SYSTEM, a corporation; BOARD OF TRUSTEES OF THE LOCAL GOVERNMENT EMPLOYEES' RETIREMENT SYSTEM, a body politic and corporate; DEPARTMENT OF STATE TREASURER, RETIREMENT SYSTEMS DIVISION; RICHARD H. MOORE, Treasurer of the State of of the Board of Trustees Teachers' and State Employees' Retirement System of North Carolina (in his individual and official capacities); and THE STATE OF NORTH CAROLINA; Defendants.
No. COA08-976.
Court of Appeals of North Carolina.
Filed April 7, 2009.
This case not for publication
Schiller & Schiller, by David G. Schiller, Kathryn H. Schiller and Marvin Schiller, for Plaintiff-Appellant.
Attorney General Roy Cooper, by Assistant Attorney General Robert M. Curran, for Defendants-Appellees.
BEASLEY, Judge.
Clayton Lee Proctor, Jr. (Plaintiff) appeals from the trial court's order dismissing his class action claim under N.C.R. Civ.P. 12(b)(6) for failure to state a claim upon which relief can be granted. We affirm.
Plaintiff is a retired member of the High Point Fire Department. Defendants are the Local Governmental Employees' Retirement System (Retirement System), the Board of Trustees of the Retirement System, the Department of State Treasurer, Retirement Systems Division, Richard H. Moore, former Treasurer of the State of North Carolina and Chairman of the Board of Trustees Teachers' and State Employees' Retirement System of North Carolina, and the State of North Carolina.
Plaintiff began employment with the State of North Carolina in April 1981 when N.C. Gen. Stat. § 128-27(d3) (1981) (Subsection (d3)) was in effect. This statute outlined provisions for certain disability retirement benefits to local government employees. Subsection (d3) stated the following:
Allowance on Disability Retirement of Persons Retiring on or after July 1, 1971  Upon retirement for disability, in accordance with subsection (c) above on or after July 1, 1971, a member shall receive a service retirement allowance if he has attained the age of 65 years, otherwise he shall receive a disability retirement allowance which shall be computed as follows:
(1) Such allowance shall be equal to a service retirement allowance calculated on the basis of the member's average final compensation prior to his disability retirement and the creditable service he would have had at the age of 65 years if he had continued in service.
Subsection (c) of N.C. Gen. Stat. § 128-27 contains the same language today as when Plaintiff was hired. It states: Disability Retirement Benefits.  Upon the application of a member or of his employer, any member who has had five or more years of creditable service may be retired by the Board of Trustees, . . . on a disability retirement allowance . . . .
Subsections (d3) and (c), read together, provided that an employee who became disabled after five years of service, and who retired due to a disability on or after July 1, 1971, would receive a retirement allowance calculated as if the employee had worked until age sixty-five.
In 1982, the North Carolina General Assembly amended N.C. Gen. Stat. § 128-27 to add 128-27(d4) (1982) (Subsection (d4)). Subsection (d4) states that:
Allowance on Disability Retirement of Persons Retiring on or after July 1, 1982.  Upon retirement for disability, in accordance with subsection (c) of this section on or after July 1, 1982, a member shall receive a service retirement allowance if he has qualified for an unreduced service retirement allowance; otherwise the allowance shall be equal to a service retirement allowance calculated on the member's average final compensation prior to his disability retirement and the creditable service he would have had had he continued in service until the earliest date on which he would have qualified for an unreduced service retirement allowance.
Subsection (d4) thus provided that the monthly retirement allowance for a local government employee who became disabled in the course of his employment after five years of service would be calculated as if the retiree had worked until the age of sixty-five or had thirty years of service, whichever came first. On the date that Subsection (d4) became effective, Plaintiff had not achieved five years of creditable service. In November 2003, after twenty-two years of service, Plaintiff was disabled, retired, and his disability retirement allowance was calculated pursuant to Subsection (d4). Plaintiff argues that his disability retirement benefits should have been calculated and paid in accordance with Subsection (d3) and not Subsection (d4). Accordingly, he seeks relief for himself and all others similarly situated. Plaintiff contends that he qualifies to receive benefits under Subsection (d3), at the date of employment, rather than at the date of vesting.
Plaintiff filed a Class Action Complaint in Wake County Superior Court in July 2007. Defendants filed a Motion to Dismiss Plaintiff's Class-Action Complaint Rule 12(b) in response. Following a hearing, the trial court granted Defendant's motion and entered an Order dismissing Plaintiff's complaint in March 2008. From this Order, Plaintiff appeals.

IMPAIRMENT OF CONTRACT
On appeal, Plaintiff argues that his Complaint stated a valid claim for relief from the State's violation of the Impairment of Contract Clause (Article 1 § 10, cl. 1 of the U.S. Const.) (Impairment Clause) of the United States Constitution. He asserts that this violation occurred when Subsection (d3) was repealed and replaced by Subsection (d4), thereby reducing his monthly disability retirement benefits.
Plaintiff maintains that the trial court based its Order on the premise that the Impairment of Contract Clause protects only a vested right. The Impairment of Contract Clause of Article 1, Section 10, Clause 1 of the United States Constitution, states that, "[n]o State shall enter into any Treaty, Alliance, or Confederation . . . pass any Bill of Attainder, ex post facto Law, or Law impairing the Obligation of Contracts. . . ." Plaintiff further argues that the trial court's interpretation is incorrect because nowhere in the language of this clause is there any requirement for a "vested" right. Plaintiff relies on Faulkenbury v. Teachers' and State Employees' Ret. Sys., 345 N.C. 683, 483 S.E.2d 422 (1997) and Bailey v. State of North Carolina, 348 N.C. 130, 500 S.E.2d 54 (1998) to argue that the threshold question should be whether a contract has been impaired by the State. Plaintiff concludes that since neither Faulkenbury, Bailey, nor the language of the Impairment Clause protects only vested rights, the Order is incorrect. We disagree.
In determining whether or not there has been a violation of the Impairment Clause, we must apply a three step analysis. See United States Trust Co. v. New Jersey, 431 U.S. 1, 52 L. Ed. 2d 92 (1977). This Court must determine: (1) if a contract exists at all; (2) if there is a contract, whether that contract was impaired, and; (3) whether the impairment was reasonable and necessary to serve an important public purpose. Faulkenbury, 345 N.C. at 690, 483 S.E.2d at 427. In the instant case, we do not reach steps two and three because we conclude that there is no contract under Subsection (d3).
Plaintiff argues that a member of the State's retirement system has a contractual right to the retirement benefits that existed at the time he accepted employment, rather than at the time his rights were vested. To support his argument, Plaintiff quotes directly from the Court's opinion in Faulkenbury:
We believe that a better analysis is that at the time the plaintiffs started working for the state or local government, the statutes provided what the plaintiffs' compensation in the way of retirement benefits would be. The plaintiffs accepted these offers when they took the jobs. This created a contract.
Faulkenbury, 345 N.C. at 690, 483 S.E.2d at 427. While the facts in Faulkenbury are similar to the present case, the plaintiffs in Faulkenbury had vested rights prior to changes in the method of calculating disability benefits. The Court states that:
We believe that when the General Assembly enacted laws which provided for certain benefits to those persons who were to be employed by the state and local governments and who fulfilled certain conditions, this could reasonably be considered by those persons as offers by the state or local government to guarantee the benefits if those persons fulfilled the conditions. When they did so, the contract was formed.
Id. at 691, 483 S.E.2d at 427 (emphasis added). This Court has held that, as a matter of law, that the retirement benefit contemplated by the statutes is effective at the time an employee's rights vest. It is only at the time an employee's rights have vested that a contract is formed. The Court goes on further to explain that:
[P]ursuant to the plaintiff's contracts, they were promised that if they worked for five years, they would receive certain benefits if they became disabled. The plaintiffs fulfilled this condition. At that time, the plaintiffs' rights to benefits in case they were disabled became vested. The defendants could not then reduce the benefits.
Id. at 692, 483 S.E.2d at 428. In the present case, however, Plaintiff had not completed five years of service at the time Subsection (d4) came into effect. Therefore, his rights had not yet vested and there was no contract under Subsection (d3). Rather, he had a contract under Subsection (d4), since Plaintiff completed five years of service at the time Subsection (d4) was in effect.
Plaintiff also selectively quotes from a passage in Bailey that states:
"According to the cardinal principle of justice and fair dealings between government and man, as well as between man and man, the parties shall know prior to entering into a business relationship the conditions which shall govern that relationship."
Bailey, 348 N.C. at 149, 500 S.E.2d at 65 (quoting Hickey v. Pension Bd., 378 Pa. 300, 309-10, 106 A.2d 233, 237-38 (1954)). However, reading further reveals that, "[p]laintiffs . . . had a contractual right to rely on the terms of the retirement plan as these terms existed at the moment their retirement rights became vested." Id. at 141, 500 S.E.2d at 60. The Supreme Court and this Court "have reaffirmed this central principle of Simpson in several subsequent cases." Bailey, 348 N.C. at 142, 500 S.E.2d at 60. See e.g., Miracle v. N.C. Local Gov't Employees' Retirement System, 124 N.C. App. 285, 290, 477 S.E.2d 204, 207 (1996) (applying the interpretation of "vested" used in Simpson and Hogan to pension terms); Hogan v. City of Winston-Salem, 121 N.C. App. 414, 419, 466 S.E.2d 303, 306-07 (1966) (members of Retirement System required to have five or more years of creditable service prior to being eligible for retirement benefits); Woodward v. Local Governmental Employees' Retirement System, 108 N.C. App. 378, 424 S.E.2d 431 (1993) (plaintiff had five years of creditable service at time of his retirement, therefore was vested by the time statute was amended).
Plaintiff argues that a recent opinion issued by this Court, Whisnant v. Teachers' and State Employees' Retirement System of North Carolina, __ N.C. App. ___, 662 S.E.2d 573 (2008), was wrongly decided and that it conflicts with Faulkenbury, Bailey, and the Subsection (d3) statute. Plaintiff's argument is not compelling. Whisnant presents the same legal issues and analyses as in the case before us. The petitioner in Whisnant argued that he was entitled to receive employee benefits under the scheme that was in place when he began work. The trial court ruled that because petitioner was not vested in the earlier plan, respondents were permitted to change the plan. Id. at __, 662 S.E.2d at 574. After citing language from Faulkenbury, this Court concluded that "[i]t is clear . . . that the terms of the contract are established at the time the benefits vest, i.e., five years after petitioner began employment." Id. at ___, 662 S.E.2d at 575.
Plaintiff's claim that the Order violates the Impairment of Contract Clause is unfounded. Although we are guided by a three-part test from United States Trust Co., our analysis ends at the first part of the test, determining whether a contract exists at all. It is clear that "[i]n the context of retirement benefits, a contractual obligation exists once the employee's rights have vested." Schimmeck v. City of Winston-Salem, 130 N.C. App. 471, 473, 502 S.E.2d 909, 911 (1998). Plaintiff does not have a valid Impairment of the Contract Clause argument because he did not have a contract under Subsection (d3).
We conclude that the trial court did not err in dismissing Plaintiff's class action complaint per N.C.R. Civ. P. 12(b)(6), failure to state a claim upon which relief can be granted. "Our concern . . . [is] whether the complaint when liberally construed states a claim for this plaintiff in this case against this defendant upon which relief can be granted on any theory." Benton v. W.H. Weaver Construction Co., 28 N.C. App. 91, 95, 220 S.E.2d 417, 420 (1975). There was no violation of the Impairment of the Contract Clause, G.S. § 128-28-7(d3), or G.S. § 128-27(d4). Accordingly, we hold that the trial court properly dismissed this claim.
For the foregoing reasons, we conclude that the trial court properly dismissed Plaintiff's claim and that its Order should be affirmed.
Affirmed.
Chief Judge MARTIN and Judge BRYANT concur.
Report per Rule 30(e).