IN THE COURT OF APPEALS OF NORTH CAROLINA

No. COA25-929

Filed 17 June 2026

Union County, No. 24CV004617-890

RICHARD D. LEMASTER, JR., Petitioner,

v.

N.C. DEPARTMENT OF STATE TREASURER, RETIREMENT SYSTEMS DIVISION, Respondent.

Appeal by petitioner from order entered 28 May 2025 by Judge Jonathan W. Perry in Union County Superior Court. Heard in the Court of Appeals 22 April 2026.

*Schiller & Schiller, PLLC, by David G. Schiller, for petitioner-appellant.*

*Attorney General Jeff Jackson, by Assistant Attorney General Natalia Isenberg, for respondent-appellee.*

ZACHARY, Judge.

Petitioner Richard D. Lemaster, Jr., appeals from a superior court order affirming the final decision of an administrative law judge ("ALJ") of the Office of Administrative Hearings ("the OAH"), which dismissed Petitioner's petition for lack of subject-matter jurisdiction. After careful review, we affirm the decision of the superior court.

## I.   Background

This case arises from the Final Agency Decision of Respondent North Carolina Department of State Treasurer, Retirement Systems Division, not to permit Petitioner to repurchase 7.3 years of creditable service in the public-employee pension

system under the now-repealed repurchase formula that existed when he vested in the system, rather than the repurchase formula in effect when he requested a repurchase calculation in 2023.

Petitioner commenced his teaching career in 1996, at which point he became a member of the Teachers' and State Employees' Retirement System ("TSERS"). When he left his teaching position, he withdrew 7.3 years of TSERS retirement service credit.[1] Petitioner then "returned to teaching in 2011, and became a TSERS member again."

In 2018, Petitioner "contacted [TSERS] and discussed repurchasing the 7.3 years of service with a [TSERS] employee," who "advised [him] that most employees wait until they are about to retire to exercise their rights to repurchase years of service, and that the repurchase amount would increase at the rate of 6.5% per year." Petitioner elected not to repurchase his years of creditable service at that time, reasoning that "reasonable investment practices would yield better results." In 2018, the Chief of Retirement Processing provided Petitioner with a calculation that the repurchase cost of 7.3 years of creditable service would be $33,790.66; in 2019, he calculated that the repurchase cost would be $36,012.05.

---

[1] A withdrawal of retirement service credit from TSERS entitles the withdrawing individual to a refund of the associated retirement contributions, and ends the individual's membership in TSERS upon receipt of the refund.

By law passed in June 2021 (and effective on 1 July 2022), the North Carolina General Assembly repealed N.C. Gen. Stat. § 135-4(k), under which Petitioner's repurchase cost had been calculated. N.C. Gen. Stat. § 135-4(k1)[2] took effect in 2022, which changed the manner in which the repurchase cost was calculated and provided that no more than five years of service could be repurchased. An Act of 28 June 2021, S.L. 2021-57, § 1.4(a), 2021 N.C. Sess. Law 181.

In 2023, Petitioner requested another repurchase calculation and was informed that he could repurchase a maximum of five years of creditable service at a cost of $51,660.83. Petitioner requested that Respondent review this decision; on 11 June 2024, Respondent confirmed in a Final Agency Decision that Petitioner could repurchase no more than five years of creditable service at a cost of $51,660.83.

On 6 August 2024, Petitioner filed a contested-case petition with the OAH, appealing from the Final Agency Decision. Petitioner sought to proceed as a class action and raised claims for relief under several theories, including failure to apply applicable law, breach of contract, unconstitutional impairment of contract, violation of due process, deprivation of equal protection, and declaratory judgment. On 6 September 2024, Respondent filed motions to dismiss and to stay; the motion to dismiss came on for hearing on 8 October 2024. In an order entered on 9 October

---

[2] Since this amendment, the North Carolina General Assembly has recodified N.C. Gen. Stat. § 135-4(k1). An Act of 20 June 2024, S.L. 2024-10, § 2(b), 2024 N.C. Sess. Law 94.

2024, the ALJ concluded that the OAH lacked subject-matter jurisdiction over Petitioner's claims and dismissed the petition without prejudice.

Petitioner appealed the ALJ's order to superior court on 7 November 2024. The superior court heard Petitioner's appeal on 18 March 2025, and in an order entered on 28 May 2025, the superior court affirmed the final decision of the ALJ, concluding that "the ALJ properly concluded as a matter of law that [the] OAH lacks subject[-]matter jurisdiction over all of Petitioner's claims in this contested case."

Petitioner filed timely notice of appeal from the superior court's order.

## II. Discussion

Petitioner raises one issue on appeal: whether "the superior court erred in affirming the final decision of the ALJ because the final decision contained errors of law." Because Petitioner limits his challenge to the first claim advanced in his initial petition—failure to apply the applicable law, our review shall be similarly limited. *See* N.C.R. App. P. 28(a) ("Issues not presented and discussed in a party's brief are deemed abandoned."). After careful review, we conclude that the OAH lacked subject-matter jurisdiction over Petitioner's first claim and thus affirm the superior court's order.

### A. Standard of Review

The issue before us—regarding subject-matter jurisdiction—is a question of law. *See Tillett v. Town of Kill Devil Hills*, 257 N.C. App. 223, 224, 809 S.E.2d 145, 147 (2017). "It is well settled that in cases appealed from administrative tribunals,

questions of law receive de novo review . . . . Under the de novo standard of review, the [superior] court considers the matter anew and freely substitutes its own judgment for the agency's." *Harris v. N.C. Dep't of Pub. Safety*, 252 N.C. App. 94, 99–100, 798 S.E.2d 127, 132 (extraneity removed), *aff'd*, 370 N.C. 386, 808 S.E.2d 142 (2017). "This Court's scope of review is the same as that employed by the [superior] court." *Overcash v. N.C. Dep't of Env't & Natural Res.*, 179 N.C. App. 697, 702, 635 S.E.2d 442, 446 (2006), *disc. review denied*, 361 N.C. 220, 642 S.E.2d 445 (2007).

**B.      Subject-Matter Jurisdiction of the OAH**

As our Supreme Court has explained, like all administrative agencies, the OAH "is a creature of the statute creating it and has only those powers expressly granted to it or those powers included by necessary implication from the legislative grant of authority." *N.C. Dep't of Revenue v. Philip Morris USA, Inc.*, 388 N.C. 181, 190, 919 S.E.2d 175, 181–82 (2025) (citation omitted). Thus, "the OAH has no jurisdiction . . . except insofar as the legislature has positively conferred such jurisdiction." *Id.* at 190, 919 S.E.2d at 182.

Under N.C. Gen. Stat. § 150B-23(a) (2025), the jurisdiction of the OAH is expressly limited. Relevant here, the OAH has jurisdiction to hear matters where it is alleged that an agency "[a]cted erroneously" or "[f]ailed to act as required by law or rule." N.C. Gen. Stat. § 150B-23(a)(2), (5).

Petitioner claims that he "has vested contractual rights to the repurchase formula contained in" the version of N.C. Gen. Stat. § 135-4(k) in effect when his

pension rights vested. In support of this proposition, Petitioner cites *Faulkenbury v. Teachers' & State Employees' Retirement System of North Carolina*, 345 N.C. 683, 483 S.E.2d 422 (1997). He contends that N.C. Gen. Stat. § 150B-23(a)(2) and (5) provide the OAH with jurisdiction to "determin[e] that a state agency must act in accordance with the rulings of the Supreme Court of North Carolin[a]."

In *Faulkenbury*, the primary issue before our Supreme Court was "whether a change in the law, which reduced [the] plaintiffs' disability retirement payments, violate[d] Article I, Section 10 of the Constitution of the United States." 345 N.C. at 690, 483 S.E.2d at 426. In the instant case, if the OAH were to consider Petitioner's claim, it would be similarly tasked with determining whether the repeal of N.C. Gen. Stat. § 135-4(k) unconstitutionally " 'impair[s] the obligations of contracts' "—that is, whether the statute's repeal unconstitutionally impairs Petitioner's vested contractual rights as concerns the repurchase of his years of creditable service. *Id.* at 690, 483 S.E.2d at 427 (quoting U.S. Const. art. I, § 10). However, the OAH is not authorized to consider this issue.

Numerous decisions of our Supreme Court have emphasized that "[t]he question of constitutionality of a statute is for the judicial branch." *Great Am. Ins. Co. v. Gold*, 254 N.C. 168, 173, 118 S.E.2d 792, 796 (1961), *overruled on other grounds by Smith v. State*, 289 N.C. 303, 222 S.E.2d 412 (1976); *see also Meads v. N.C. Dep't of Agric.*, 349 N.C. 656, 670, 509 S.E.2d 165, 174 (1998) ("[I]t is the province of the judiciary to make constitutional determinations."). The OAH has no authority to

adjudicate constitutional challenges to statutes, the power of judicial review being reserved to the judicial branch. We therefore conclude that the superior court did not err in affirming the OAH's final decision dismissing Petitioner's petition for lack of subject-matter jurisdiction.

## III.    Conclusion

For the foregoing reasons, we affirm the order of the superior court affirming the final decision of the OAH dismissing Petitioner's petition without prejudice for lack of subject-matter jurisdiction.

AFFIRMED.

Judges GRIFFIN and FREEMAN concur.