Lee v. Coastal Agrobusiness, Inc., 2012 NCBC 49.

STATE OF NORTH CAROLINA

COUNTY OF SAMPSON

IN THE GENERAL COURT OF JUSTICE
SUPERIOR COURT DIVISION
09 CVS 1719

ARTHUR CALE LEE and KEVIN JACOB )
LEE, a partnership d/b/a DOUBLE L FARMS, )
ARTHUR T. LEE and on behalf of all others )
similarly situated, )
                Plaintiffs )
                 )
       v. )
                 )
                 )
COASTAL AGROBUSINESS, INC. and )
INTX MICROBIALS, LLC, )
              Defendants )

**ORDER DENYING CLASS
CERTIFICATION**

THIS CAUSE, designated a mandatory complex business case by Order of the

Chief Justice of the North Carolina Supreme Court, pursuant to N.C. Gen. Stat. § 7A-

45.4(b) (hereinafter, all references to the North Carolina General Statutes will be to

"G.S."), and assigned to the undersigned Chief Special Superior Court Judge for

Complex Business Cases, comes before the court upon a motion for class certification

contained in Plaintiffs' Complaint ("Class Motion"),[1] pursuant to Rule 23, North Carolina

Rules of Civil Procedure ("Rule(s)"), and Plaintiffs' Motion To Strike Certain Portions of

the Affidavit of John M. Whitehead ("Motion to Strike")[2] (collectively, "Motions"); and

---

[1] Pursuant to Rule 15.2 of the General Rules of Practice and Procedure for the North Carolina Business Court ("BCR"), "[e]ach motion shall be set out in separate paper." The court, in its discretion, will treat the allegations within the Complaint as the Class Motion.
[2] The Motion to Strike was filed without an accompanying brief. This practice is inconsistent with BCR 15.2, which requires that "[a]ll motions, unless made orally during a hearing or trial, shall be accompanied by a brief . . .," notwithstanding certain limited exceptions. While the Motion to Strike could be denied summarily pursuant to BCR 15.11, the court, in the interest of justice and in the exercise of its discretion, elects to receive the Motion to Strike.

THE COURT, having considered the Motions, briefs and arguments in support of and in opposition to the Class Motion[3] and appropriate matters of record, FINDS and CONCLUDES as follows.

I.

PROCEDURAL HISTORY

1.     On October 16, 2009, Plaintiffs filed their Complaint in this civil action. The Complaint seeks certification of this matter as a class action and alleges three causes of action ("Claim(s)"): Breach of Implied Warranty, Negligence and Unfair and Deceptive Trade Practice[s].  Plaintiffs seek punitive, compensatory and treble damages.

2.     On November 16, 2009, Defendant Coastal AgroBusiness, Inc. ("Coastal") filed and served an Answer, Motion to Dismiss and Counterclaim.  Coastal's Counterclaim seeks payment from Plaintiffs for unpaid amounts due under open credit accounts.[4]  Coastal also filed separately a Motion to Deny Certification of Class.[5]

3.     On December 22, 2009, Defendant INTX Microbials, LLC ("INTX") filed and served its Answer ("INTX Answer").

4.     On March 15, 2010, Coastal filed its Motion for Summary Judgment on Counterclaim, the Whitehead Affidavit and its Motion to Dismiss Claims of Plaintiff Arthur T. Lee ("Coastal Motion to Dismiss").

---

[3] In determining the Class Motion, the court has not considered those portions of the John M. Whitehead Affidavit ("Whitehead Affidavit") that were objected to by Plaintiffs.  In view of the ruling on the Class Motion, as reflected in this Order, the Motion to Strike is moot and further consideration of it by the court is not necessary.  *See* ¶ 44, *infra.*

[4] The account Claims have been resolved by he court in favor of Coastal, discussed *infra.*

[5] On October 6, 2010, Plaintiff filed a motion titled "Plaintiffs' Motion to Continue Hearing on Motion of the Defendant Coastal Agrobusiness, Inc.'s (sic) to Deny Class Certification and, in the alternative, Plaintiffs' Motion for an Order Certifying the Claim."  That motion incorporated the same allegations contained in the Complaint in support of class certification.

5. On August 25, 2010, INTX filed its Motion for Summary Judgment as to Claims of Plaintiff Arthur T. Lee ("INTX Motion").

6. On June 20, 2012, Plaintiffs filed an Amended Complaint.[6]

7. On June 21, 2012, the court entered an Opinion and Order granting: (a) Coastal's Motion for Summary Judgment on Counterclaim, (b) the Coastal Motion to Dismiss and (c) the INTX Motion. As a result, the Claims of Arthur T. Lee were dismissed; the court entered judgment on the Counterclaim in favor of Coastal and (a) against Plaintiffs Arthur C. Lee, Kevin J. Lee and their partnership d/b/a Double L Farms ("Partnership"), jointly and severally, in the amount of $165,495.78, plus interest; and (b) against Arthur T. Lee in the amount of $41,227.19, plus interest.

8. On July 5, 2012, INTX filed its Answer to Plaintiffs' Amended Complaint, and on July 9, 2012, Coastal filed its Answer to Plaintiffs' Amended Complaint.[7]

9. On July 12, 2012, Plaintiffs filed the Motion to Strike. The Motion to Strike seeks to exclude paragraphs 10, 14, 17, 18 and 20 in their entirety, as well as portions of paragraphs 13 and 15, on the contended basis that the affidavit does not show on its face how the affiant has personal knowledge of the facts alleged in these paragraphs.

10. On July 12, 2012, Plaintiffs filed a Brief in Support of Plaintiffs' Motion for Class Certification. On August 2, 2012, Coastal filed a Brief in Opposition to Plaintiffs' Motion for Class Certification. On August 3, 2012, INTX filed a Brief in Opposition to Plaintiffs' Motion for Class Certification.

---

[6] On October 4, 2010, Plaintiffs filed a Motion to Amend Complaint, seeking only to change the name of the Plaintiff Partnership from Double Lee Farms to Double L Farms. On October 11, 2010, the court, ruling from the bench, granted Plaintiffs' Motion to Amend Complaint.
[7] All subsequent references to Defendants' Answers to the Amended Complaint will be noted as "Coastal Answer" and "INTX Answer" respectively.

11. On August 2, 2012, Coastal filed a Supplemental Affidavit of John M. Whitehead ("Supplemental Whitehead Affidavit"). Plaintiffs have not formally objected to the Supplemental Whitehead Affidavit.

12. The Motions have been fully briefed and argued and are ripe for determination.

## II.

## PLAINTIFFS' CLASS MOTION

## A.

## Factual Background

In substance, the respective pleadings reflect the following:

13. Plaintiffs Arthur Cale Lee ("Arthur C. Lee") and Kevin Jacob Lee ("Kevin Lee") are general partners in the Partnership.[8]

14. Plaintiff Arthur T. Lee, father of Arthur C. Lee and Kevin Lee, is not a partner in the Partnership.[9] As provided in the court's Opinion and Order of June 21, 2012, he is no longer an active party to this civil action. Hereinafter all references to Plaintiffs will mean Arthur C. Lee and Kevin Lee.

15. Coastal is a North Carolina corporation with its principal office in Greenville, North Carolina.[10] Coastal is a merchant that supplies fertilizer, chemicals and other related products for use in agricultural enterprises to the public and the farming community.[11]

---

[8] Am. Compl. ¶ 1.
[9] *Id.* ¶ 2.
[10] *Id.* ¶ 3.
[11] *Id.* ¶ 8.

16.     INTX is a limited liability company with its principal office in Kentland, Indiana.[12] INTX manufactures and distributes inoculants and other products for use in agriculture, including the inoculant N-TAKE.[13]

17.     In 2008, Plaintiffs purchased N-TAKE from Coastal for use on their peanut crop.[14]

18.     N-TAKE is an inoculant that is applied to peanut seeds for the purpose of enhancing the growth and development of the peanut plant.[15] N-TAKE is a biological, living agent that allows peanut plants to form nodules that can draw nitrogen naturally from the air.[16] The product comes with specific instructions related to the proper application and storage of the inoculant.[17]

19.     Plaintiffs allege that they properly applied N-TAKE to their 2008 peanut crop and that the peanut seeds they used were good and did not contain any defects.[18]

20.     Plaintiffs further allege that the N-TAKE they purchased was defective in that it did not contain the proper chemicals and elements necessary to serve its purpose as an inoculant and was not fit for the purpose for which it was sold.[19] Plaintiffs allege that they suffered causally related damages consisting of the loss of the 2008 peanut crop, the cost of fertilizer and the purchase price of N-TAKE.

21.     Defendants have raised several defenses to Plaintiffs' Claims. They contend that any deficiency in the ability of Plaintiffs' peanut plants to produce adequate nodules could have been remedied by the application of additional nitrogen to the

---

[12] *Id.* ¶ 4.
[13] INTX Answer ¶ 6.
[14] Am. Compl. ¶ 5.
[15] *Id.*
[16] Whitehead Aff. ¶ 6.
[17] *Id.* ¶¶ 8-9.
[18] Am. Compl. ¶¶ 13-14.
[19] *Id.* ¶ 19.

plants. Defendants further contend that Plaintiffs failed to mitigate any losses they may have suffered by not applying additional nitrogen. Defendants further allege that Plaintiffs did not exercise reasonable care in the maintenance of Plaintiffs' peanut plants, the handling and storage of N-TAKE and the application of N-TAKE to peanut plants. Defendants also allege that Plaintiffs' handling and application of N-TAKE was in a manner contrary to the instructions and manuals accompanying the product.[20]

22. During the period from March 14, 2008, through October 15, 2008, the Partnership purchased various other farm products from Coastal.[21]

23. During the period from October 1, 2007, through September 30, 2008 ("2008 Peanut Season"), Coastal sold N-TAKE to eighty-seven customers including Plaintiffs.[22]

24. Twenty-one of these eighty-seven customers, including Plaintiffs, reported problems to Coastal related to their use of N-TAKE. Defendants settled with twenty of these customers and partially reimbursed them for their nitrogen expenses. As a result of the settlements these customers no longer have claims against Defendants.[23]

25. Of the customers who reported problems related to N-TAKE, Plaintiffs were the only customers who did not settle with Defendants.[24]

B.

Discussion

26. Plaintiffs seek to litigate the present matter as a class action and ask this court to certify a class of sixty-seven customers who purchased N-TAKE from Coastal

---

[20] Coastal Answer 5; INTX Answer 6-9.
[21] Griffin Aff. ¶ 9.
[22] Def. Coastal's Answer Pl. First Interrog. ("Coastal Customer List").
[23] Pl. Br. Supp. Mot. Class Certif. ("Plaintiff's Memo").
[24] *Id.*

during the 2008 Peanut Season.[25]  The proposed class represents all of Coastal's customers who purchased N-TAKE during the 2008 Peanut Season, except those twenty who settled and no longer have claims against Defendants.[26]  Plaintiffs contend that a class exists as to this group of customers based on the allegations that all of the proposed class members purchased defective N-TAKE during the 2008 Peanut Season and suffered losses to their peanut crop yield as a result of their use of N-TAKE.[27]  Plaintiffs contend that all other prerequisites to class certification are satisfied.[28]

27.     Defendants contend that the Class Motion should be denied because Plaintiffs have produced no competent evidence suggesting the existence of a class. Defendants argue that Plaintiffs have not adequately demonstrated that class members other than Plaintiffs had inadequate crop yields during the 2008 Peanut Season or suffered any other losses as a result of using N-TAKE.  Therefore, Defendants argue, there is an insufficient basis on which to find that any class exists.[29]  Defendants further contend that the Class Motion should be denied because individual issues among proposed class members will predominate over any common questions of law or fact.[30]

1.

Class Prerequisites

28.     Rule 23(a) provides that "[i]f persons constituting a class are so numerous as to make it impracticable to bring them all before the court, such of them, one or more, as will fairly insure the adequate representation of all may, on behalf of all, sue or

---

[25] *Id.*
[26] *Id.*
[27] *Id.*
[28] *Id.*
[29] *Id.*
[30] Coastal Memo 7-8; INTX Memo 11-13.

be sued." The objective of Rule 23 is the efficient resolution of the claims or liabilities of many individuals in a single action and the avoidance of repetitious litigation and potentially inconsistent results involving common questions, related events or requests for similar recoveries. Plaintiffs in this case have the burden of showing that all the requirements of Rule 23 have been met to allow the action to proceed as a class action. *Crow v. Citicorp Acceptance Co.,* 319 N.C. 274, 282 (1987).

29.     In order to succeed on a motion for class certification the moving party must demonstrate, as a threshold matter, the existence of a class. To demonstrate the existence of a class, a plaintiff must show that the named and unnamed members of the proposed class each have an interest in the same issues of law or fact and that common issues predominate over issues affecting only individual class members. *Harrison v. Wal-Mart Stores, Inc.*, 170 N.C. App. 545, 545-46 (2005) (citing *Crow*, 319 N.C. at 280-82 and *Faulkenberry v. Teachers' & State Emp. Ret. Sys. of N.C.*, 345 N.C. 683, 697 (1997)).

30.     In addition to demonstrating the existence of a class, the party seeking class certification must also demonstrate that: (a) the named representative(s) will fairly and adequately represent the interests of all members of the class; (b) there is no conflict of interest between the named representatives and members of the class; (c) the named representatives have a genuine personal interest, not a mere technical interest, in the outcome of the case; (d) the class representatives within this jurisdiction will adequately represent members outside the state; (e) class members are so numerous that it is impractical to bring them all before the court and (f) adequate notice can be given to all class members. *Faulkenberry*, 345 N.C. at 697.

31.     Even where the prerequisites to a class action are established, "the decision of whether a class action is superior to other available methods of adjudication . . . continues to be a matter left to the trial court's discretion." *Crow*, 319 N.C. at 284. The usefulness of a class action device must be balanced against inefficiency or other drawbacks. *Id.* The trial court has broad discretion in this regard and is not limited to consideration of matters expressly set forth in Rule 23. *Id.*

2.

No Adequate Demonstration that Proposed Class Members
Have an Interest in the Same Issue of Law or Fact

32.     As noted above, the burden is on Plaintiffs to demonstrate adequately that a class exists. In assessing Plaintiffs' burden in the context of the instant matter, it is important to note that this civil action has advanced beyond the pleading stage. Our courts have made a distinction between a plaintiff's burden of demonstrating the existence of a class at the pleading stage and the same burden following discovery and a hearing on class certification. *Id.* at 282. Where, as here, there have been ample opportunities for discovery and a hearing on class certification, Plaintiffs must establish, to the satisfaction of this court, "the *actual* existence of a class, the existence of other prerequisites to utilizing the class action procedure, and the propriety of their proceeding on behalf of the class." *Id.* (emphasis added). At the current stage of these proceedings it is insufficient for Plaintiffs merely to allege the existence of a class. *Id.* Instead, Plaintiffs must demonstrate the actual existence of a class. *Id.*

33.     This action was filed in October of 2009 and was designated to this court in November of the same year. All parties have had ample time to conduct discovery. Plaintiffs have served interrogatories, made requests for production of documents, filed

affidavits and taken depositions. In response to Plaintiffs' interrogatories in 2010, Coastal provided Plaintiffs with a complete list of Coastal's N-TAKE customers for the 2008 Peanut Season.[31] This list included customer addresses, thus facilitating the ability of Plaintiffs to communicate directly with potential class members.[32] The customers included in this list, excluding those twenty discussed above who are not eligible for participation in the class, compose the class Plaintiffs seek to certify.

34. To date, however, Plaintiffs have not produced any competent evidence suggesting the existence of a class. There is no indication before the court that any of the sixty-seven proposed class members, other than Plaintiffs, experienced problems related to their use of N-TAKE, have potential claims against Defendants or are otherwise interested in this action. Notably, Plaintiffs conceded at a hearing on the Class Motion that they had not attempted to make contact with proposed class members to determine whether any of them had experienced problems with N-TAKE during the 2008 Peanut Season.

35. The only evidence before the court that customers other than Plaintiffs had problems related to the use of N-TAKE is that portion of the Whitehead Affidavit to which no objection was lodged by Plaintiffs and Coastal's Answer to Plaintiff's First Set of Interrogatories. This evidence indicates that Coastal received twenty-one complaints related to N-TAKE's effectiveness during the 2008 Peanut Season. Plaintiffs acknowledge, however, that the twenty Coastal customers who reported problems related to N-TAKE and subsequently arrived at settlements with the Defendants are not

---

[31] Coastal Customer List.
[32] *Id.*

to be included in the class.[33]  Because the customers who ultimately settled with Defendants are not part of the proposed class, the court does not consider any harm suffered by them to be indicative of a common interest among the sixty-seven proposed class members.

36.     Based on the record, the only commonality among the proposed class members is the purchase of N-TAKE.  The court finds and concludes that this is an insufficient basis on which to determine the existence of a common question of law or fact shared by all proposed class members.  In so finding, the court notes that the Plaintiffs in this case have a relatively difficult burden.  The alleged harm to proposed class members and any resultant damages are not self-evident.  No claims for breach of implied warranty, unfair and deceptive trade practices, negligence or damages of any kind follow necessarily from the purchase of N-TAKE, standing alone.  Because the harm allegedly suffered by the proposed class members is not self-evident, Plaintiffs bear the burden of making at least some demonstration of a causal connection between the purchase and use of N-TAKE by proposed class members and some harm suffered by them as a result.  In the absence of such a showing, there are no grounds upon which the court may determine that the proposed class members have an interest in the questions of law and fact asserted here.

37.     It is true that once a plaintiff establishes an issue of law or fact common to all class members, the possibility of individualized damages is a collateral matter, and is not typically grounds for denying class certification.  *See Faulkenberry*, 345 N.C. at 698; *Pitts v. Am. Sec. Ins. Co.*, 144 N.C. App. 1, 12 (2001).  However, the court does not base its findings and conclusions here on the potential for individualized damages

---

[33] Plaintiff's Memo.

among the proposed class members. Rather, there simply is no indication in the record that members of the proposed class suffered any damages or might be said to have an interest in this litigation.[34]

38.     At the class certification stage, the focus "is properly on the *typicality* of the plaintiff's claim as it applies to the general liability issues [and] not on the plaintiff's ultimate ability to recover." *Pitts*, 144 N.C. App. at 12 (quoting 1 Newberg on Class Actions § 3.16 at 3-88-90 (3d ed. 1992).[35]  Here, there is no indication that Plaintiffs' Claims against Defendants are typical among the class to be certified.  In fact, the absence of information in the record related to the sixty-seven proposed class members suggests that Plaintiffs' Claims are not typical among the proposed class members.  It appears to the court that Plaintiffs have attempted to demonstrate that the proposed class members have an interest in this litigation by (a) alleging that Plaintiffs suffered harm to their peanut crop as a result of their use of N-TAKE and (b) demonstrating that N-TAKE was sold to other customers for use on peanut crops.  Plaintiffs, in substance, ask this court to base class certification on the unsupported inference that all proposed class members likely suffered damages similar to those allegedly suffered by Plaintiffs.

39.     As noted previously, Plaintiffs must do more at this stage of the proceedings than properly allege the existence of a class.  Plaintiffs' allegations that N-

---

[34] The necessary consequence of Plaintiffs' failure to demonstrate that all the proposed class members have an interest in this action is that the proposed class is overbroad.  The Court of Appeals has noted that the burden is on the plaintiff during class certification proceedings to "show that he has, through thorough discovery and investigation, presented the trial court with as tailored a proposed class as practicable." *Blitz v. Agean, Inc.*, 197 N.C. App. 296, 311 (2009).  As previously noted, Plaintiffs have conducted discovery but have made no attempt to contact members of the proposed class or taken any steps to confirm that proposed class members have a potential interest in this action.  Accordingly, the proposed class is not "as tailored" as is practicable under the circumstances and for that reason alone should not be certified.

[35] North Carolina courts have found that federal case law and Newberg on Class Actions, though not binding, may be instructive. *Hamilton v. Memorex Telex Corp.*, 118 N.C. App. 1, 16 (1995); *see also Pitts*, 144 N.C. App. at 11, n.5 (stating same).

TAKE was defective as to all proposed class members and that all members of the proposed class suffered losses as a result of said use are unsupported by any evidence in the record. Accordingly, Plaintiffs have not adequately demonstrated that members of the proposed class have a common interest in this litigation.

3.

Issues Affecting Only Individual Class Members
Would Predominate Over Common Issues

40. There is no requirement that the claims asserted in any class action by class members be factually identical to each other. *Pitts*, 144 N.C. App. at 13. The possibility that the actions asserted by the proposed class will require individualized showings of facts does not preclude a finding that a class exists. *Id.* Instead, the existence of a class rests on whether the same issue of law or fact predominates over any individual issues. *Id.* While individualized proof of damages may be considered when determining whether a class exists, the relevant inquiry is whether the common issues of law or fact in the case predominate over the individualized damage issues. *Id.* at 12.

41. The issue of causation as to any losses suffered by the proposed class members as a result of using N-TAKE will make a class action unwieldy. Even assuming that N-TAKE was defective in the manner Plaintiffs allege and that members of the proposed class suffered reduced crop yields attributable in some degree to the use of N-TAKE, the court would have to make substantial factual determinations as to each individual class member in order to award appropriate relief. Such findings by the court would likely include: (a) weather conditions relative to each crop; (b) the nature of soil conditions on each individual farm; (c) the manner and timing of each individual

class member's application of N-TAKE; (d) the manner in which N-TAKE was stored and handled by each class member; (e) the time at which each individual class member's peanut crop was planted; (f) the individual experience and expertise of each farmer; (g) prior uses of each class member's farming land and (h) the remedial measures taken by each class member, if any. The court finds and concludes that the nature and delicacy of farming operations, particularly as to the storage, handling and application of inoculants such as N-TAKE, give rise to a substantial number of individual considerations that are likely to predominate over any common issues. Accordingly, if this litigation were to proceed as a class action, individual factual issues among proposed class members would predominate over any common questions of law or fact.

42.     Similarly, there is no ready calculus by which the court could assess any potential damages to class members. Any assessment and award of damages to respective class members would require significant individual inquiry by the court. Were the present action to proceed as a class action, the court would, in substance, be required to conduct sixty-seven separate trials in order to reach an appropriate damages award as to the class plaintiffs. Accordingly, individual damages issues would substantially predominate over any common questions of law or fact.

43.     Based on the foregoing, the court CONCLUDES that Plaintiffs have not met their burden of demonstrating that the proposed class members have a common interest in the issues of law or fact asserted here. The court further CONCLUDES that individual issues among proposed class members would predominate over common questions of law or fact, if any exist. Accordingly, the Class Motion should be DENIED.

## III.

### MOTION TO STRIKE

44.     The court notes that the Motion to Strike portions of the Whitehead Affidavit is presently before it for consideration.  The court did not consider any contested portions of the Whitehead Affidavit in denying the Class Motion.  Accordingly, the court CONCLUDES that the Motion to Strike is MOOT.  If Defendants attempt to use the Whitehead Affidavit at a future point in this civil action, Plaintiffs may renew their objection at that time.

NOW THEREFORE, based upon the foregoing FINDINGS and CONCLUSIONS, it hereby is ORDERED that:

1.     Plaintiffs' Motion for Class Certification, as stated in the Complaint and the Amended Complaint, is DENIED.

2.     Plaintiffs' Motion to Strike Certain Portions of the Affidavit of John M. Whitehead is MOOT.

This the 27th day of September, 2012.