DAVID L. PRITCHARD, VANCE MIDGETT, JAMES STANLEY, TOMMY POW-
    ELL, JOHN W. HOLMES, HUGH TARKENTON, VANN RANHORN, CARL-
    TON WHITE AND RICHARD TURNER v. ELIZABETH CITY, NORTH
    CAROLINA; TOMMY M. COMBS, CITY MANAGER OF ELIZABETH CITY; JOHN
    F. WEEKS, MAYOR OF ELIZABETH CITY; PARKER MIDGETT, TOMMY GRIF-
    FIN, PETE HOOKER, ANNE CHORY, GARNIE BANKS, W. G. WILLIAMS,
    JOSEPH ANDERSON, AND ANNIE BERRY, MEMBERS OF THE CITY COUNCIL
    OF ELIZABETH CITY

No. 851SC780

(Filed 1 July 1986)

1. Municipal Corporations § 9— firefighters—accumulation of vacation leave—or-
    dinance construed
        The Elizabeth City city council did not intend an ordinance allowing
    firefighters to accumulate a maximum of thirty days vacation leave to result in
    the accumulation of twenty-four hours for each of those thirty days, even
    though the firefighters worked twenty-four hours on and forty-eight hours off.
    Other sections of the ordinance defined a firefighter's workday as twelve
    hours for purposes of accruing and charging vacation leave; the City's clear in-
    tent was to treat all employees fairly and equally; defining a firefighter's work-
    day as twelve hours resulted in all employees having enough vacation leave to
    take approximately the same amount of time off each year; and a 1980 or-
    dinance clearly defining a firefighter's workday as twelve hours simply
    reorganized sections and subsections and did not suggest that the City intend-
    ed to change the maximum amount of vacation leave a firefighter could ac-
    cumulate.

2. **Municipal Corporations § 9— municipal employees—accumulation of vacation leave—supplemental contract—summary judgment for City improper**

   The Elizabeth City city council was estopped to assert the invalidity of supplementary contracts with firemen for accumulated vacation leave and summary judgment was improperly granted on a breach of contract claim by the firefighters against the City where the firefighters worked twenty-four hour shifts; a 1972 ordinance allowed firefighters to accumulate up to thirty days vacation but did not expressly define the length of a firefighter's workday; the correct interpretation of the ordinance limited accumulation of vacation to thirty twelve-hour days; the City Manager and the fire chief had the authority to offer the firefighters an accumulated vacation leave benefit program and to enter into supplementary employment contracts; the City encouraged the continued employment of its firefighters by listing the monetary value of the total accumulated vacation leave in excess of 360 hours and expressly challenged the firefighters to compare the City's compensation package with other employers' programs; the representations that more than 360 hours could be accumulated became supplementary employment contracts because they were inducements to continued employment; it is likely that some firefighters avoided taking vacation leave because its monetary value at termination was increasing; and it would be unfair to charge the firefighters with knowledge of the appellate interpretation of the language in the ordinance when the city officials authorized to administer that ordinance made the same error as the firefighters.

3. **Constitutional Law §§ 25.1, 23.1— employer's adjustment of vacation leave— not unconstitutional**

   An Elizabeth City ordinance limiting the accumulation of vacation leave by firefighters to thirty twelve-hour days per year did not unconstitutionally impair the obligations of the firefighters' contract and the adjustment of the firefighters' accumulated leave did not amount to an unconstitutional taking of property because the ordinance was not applied retroactively. The City applied the correct, albeit belated, interpretation of the previous ordinance in adjusting the firefighters' leave.

APPEAL by plaintiffs from *Griffin (William C.), Judge.* Judgment entered 25 February 1985 in Superior Court, PASQUOTANK County. Heard in the Court of Appeals 5 December 1985.

*Edelstein and Payne, by Steven R. Edelstein, for plaintiff appellants.*

*Wilson & Ellis, by M. H. Hood Ellis, for defendant appellees.*

BECTON, Judge.

This action for declaratory and other relief was brought by nine firefighters employed by Elizabeth City. They seek relief for the removal of accumulated vacation leave from their employment

records by defendants Elizabeth City, the city manager, the mayor and the members of the city council. We reverse and remand in part and affirm in part.

I

The material facts are not in dispute. Elizabeth City is a municipal corporation. Each of the plaintiff firefighters began working for Elizabeth City between 1972 and 1980 except Mr. Powell, who began in 1963. Each firefighter had an oral contract with the city for an indefinite period of employment. The contracts were made on behalf of the city by the then-current chief of the fire department. Each firefighter was told that he would receive a certain annual salary plus vacation leave, sick leave and other benefits. It was understood by all parties that the benefits were part of the compensation and were earned each pay period. The firefighters were also told that their schedules would comprise a twenty-four-hour workday followed by forty-eight hours off.

A 1972 city ordinance, applicable to firefighters, provided in Division 4:

Section 5. *Vacation Leave.*

(a) *Vacation Leave Earned.* Each full-time employee shall earn vacation leave at the rate of five-sixths (5/6) workdays per calendar month of service for a total of two (2) calendar weeks per year. For purposes of determining vacation leave earned or taken, the Fireman's workday shall be considered to be each twelve hours absent from duty.

(b) *Previous Vacation Credit.* Vacation credits accumulated by each employee as of the effective date of this Article shall be retained by the employee and used in accordance with the provisions of this Article.

(c) *Granting of Vacation Leave.* Employees shall be granted the use of earned vacation leave upon request at those times designated by department heads which will least obstruct normal operations of the department. . . .

(d) *Vacation Leave Accumulation.* Vacation leave may accumulate to a maximum of thirty (30) workdays of vacation leave, provided that upon the recommendation of a depart-

ment head and with approval of the City Manager, an employee may accumulate up to sixty (60) workdays of vacation leave for a special purpose.

(e) *Terminal Pay.* Upon submission of his resignation, an employee shall be paid for vacation time accumulated to the date of separation provided he has completed one year of continuous service and provided he has submitted notice to his immediate superior at least two weeks in advance of the effective date of resignation. An employee who is involuntarily separated without fault or delinquency on his part shall be paid for vacation leave accumulated to the date of separation. . . . In no case shall terminal pay be for more than thirty (30) work days of accumulated vacation leave.

A "Personnel Handbook" was issued by the city concerning the 1972 ordinance. Under Section IV, describing fringe benefits, the handbook states that each employee is entitled to be paid for "the number of vacation days he has to his credit, not to exceed thirty days or a month and one-half." The handbook did not mention the number of hours in a workday.

As the firefighters worked each pay period, their employment records and the records of both the fire department and the city were updated to reflect the total vacation leave that had accumulated. Until 1981, these records indicated that each of the plaintiff-firefighters had accumulated vacation leave in excess of 360 hours. Personnel forms for the 1978 and 1979 calendar years, approved and signed by the city manager and by the chief of the fire department, were sent to each firefighter. The forms listed, among other items of compensation, each employee's accumulated vacation leave, which, for each plaintiff, was in excess of 360 hours. The monetary value of the total accumulated leave was also listed. In addition, the city stated on each form:

This compensation summary illustrates that your job is worth much more to you and your family than the money you take home. The City's wages and benefits compare very favorably with those of other employer's [sic] in the area.

In May 1978, the city began to consider a new personnel policy. A draft copy of the new policy did not define a firefighter's workday. Nonetheless, an ordinance enacted in May 1980 de-

fines a firefighter's workday as twelve hours for purposes of compensation for accumulated vacation leave. The ordinance provides in relevant part in Article IV:

3.0 *Vacation Leave.* Vacation shall accrue to the credit of each full-time permanent employee as follows:

|  | *Days of Leave* | |
| Length of Service | *Accumulation** | |
|  | Per Month | Per Year |
| 1 through 5 years | 0.83 ⅓ day | 10 days |
| 6 through 10 years | 1.00 day | 12 days |
| 11 through 20 years | 1.25 days | 15 days |
| 21 years or longer | 1.66 ⅔ days | 20 days |

* Compensation for a day of Vacation Leave equals pay for twelve hours for an employee assigned to a duty week that averages fifty-six hours; and pay for eight hours for all others.

The maximum vacation leave that may accrue to an employee's credit is limited to thirty days. . . .

Firefighters work a week that averages fifty-six hours.

In September 1982, the city adjusted the employment records of the plaintiff-firefighters, removing hours of accumulated vacation leave that were in excess of 360. Subsequently, the firefighters filed this action. They assert that the 1972 ordinance, which limited accumulated vacation leave to thirty "workdays," did not define "workday" for the purpose of accumulating vacation leave. Therefore, the firefighters contend, they could accumulate up to 720 hours of vacation leave because a firefighter's workday is a twenty-four-hour shift. The firefighters argue that by removing the accrued hours, the defendants (1) breached the firefighters' employment contracts; (2) violated their constitutional rights by enacting a law impairing contracts and by taking their property without due process of law; and (3) violated their civil rights under 42 U.S.C.A. Sec. 1983 (1981). The firefighters sought a

declaratory judgment establishing their right to the allegedly vested accumulated vacation leave in excess of 360 hours that was removed from their records. They also sought compensatory and punitive damages and attorney's fees.

Defendants maintain that the 1972 ordinance legally and unambiguously limited accumulated vacation leave to thirty twelve-hour workdays, or 360 hours. They assert that the listing of hours in excess of 360 was an error, but that those hours did not become the vested property of the firefighters.

The trial court granted summary judgment in favor of the defendants, and the firefighters appeal. They argue that the court erred in granting summary judgment as to each of their claims for relief. They also assert that the court erred to the extent it relied on the statute of limitations, on the doctrine of governmental immunity, on defendant's contention that monetary damages are inappropriate, or on the defense of good faith.

We reverse summary judgment on the breach of contract claim. Although the 1972 ordinance legally limited accumulated vacation leave to 360 hours, the city is estopped to deny the validity of the employment contracts with the firefighters. These contracts were not ultra vires the city. The case is remanded to the trial court on the breach of contract claim for proceedings consistent with this opinion. We affirm summary judgment on all other issues.

## II

The defendants in this action concede the facts as alleged by the firefighters. They argue that even on these facts, summary judgment was properly granted because the moving party was entitled to judgment as a matter of law. *See Moore v. Crumpton*, 306 N.C. 618, 295 S.E. 2d 436 (1982). Central to this appeal is the proper interpretation of the 1972 ordinance. This is a question of law.

[1] When interpreting an ordinance, the intention of the municipal corporation must be ascertained and given effect. *Cogdell v. Taylor*, 264 N.C. 424, 142 S.E. 2d 36 (1965); *Minton v. Town*

*of Ahoskie*, 21 N.C. App. 716, 205 S.E. 2d 626 (1974). "The rules applicable to the construction of statutes are equally applicable to the construction of municipal ordinances." *Cogdell*, 264 N.C. at 428, 142 S.E. 2d at 39 (citations omitted). If the ordinance is clear and unambiguous, its plain meaning will be enforced. *Minton.* An interpretation that results in illogical or absurd consequences should be avoided. *Helms v. Powell*, 32 N.C. App. 266, 231 S.E. 2d 912 (1977). "Ordinances must be read and construed as a whole or as an entirety in the light of circumstances existing at the time of their adoption, with proper regard for the consequences which would result from giving to them a particular meaning; the courts must keep in mind the object or purpose of the enactments . . . ." 56 Am. Jur. 2d *Municipal Corporations* Sec. 398, at 444 (1971) (footnotes omitted). An ordinance that is ambiguous or susceptible to different reasonable constructions may be interpreted with the aid of the doctrine of contemporaneous construction: "[A] practical construction accorded [to the ordinance] by enforcing officers is given great weight." *Id.* Sec. 405, at 448-49 (footnote omitted). "But such a construction is not binding on the courts." 4 McQuillin, Municipal Corporations, Sec. 12.177e (3d rev. ed. 1985) (footnote omitted).

It is clear from the 1972 ordinance that when a firefighter *earned* a "workday" of vacation leave, twelve hours were to be added to that firefighter's total accumulated vacation leave. It is equally clear that whenever a firefighter was absent from duty for a twelve-hour period, one "workday" (or twelve hours) was to be removed from total accumulated vacation leave. The issue in this case is the proper interpretation of the following provision in subsection (d): "Vacation leave may accumulate to a maximum of thirty (30) workdays of vacation leave. . . ." The firefighters argue that this sentence reasonably could be interpreted to mean that a "workday" for purposes of allowing hours to accumulate was a twenty-four-hour day rather than a twelve-hour day. We agree. Nonetheless, we conclude that this is not what the city council intended.

Reading the ordinance as a whole, we conclude that the definition in Section 5(a) applies as well to Section 5(d). The legislature defined the firefighters' workday as twelve hours for

purposes of determining vacation leave "earned or taken." Having so defined a firefighter's workday in Section 5, if the city council had intended a firefighter's "workday" to mean a twenty-four-hour day for purposes of *accumulating* vacation leave, it would have redefined it for that purpose in subsection (d). We do not believe the city council intended to allow firefighters to accumulate twelve hours for each day of vacation leave "earned" but to accumulate twenty-four hours for each of the thirty days representing the maximum amount of accumulated vacation leave allowed by the city.

The city's clear intention was to treat all employees fairly and equally. The city assured equal treatment in subsection (a) by defining a firefighter's workday as a twelve-hour day for purposes of earning and taking vacation leave, thereby offering to all employees enough vacation leave to take approximately the same amount of time off each year.[1] It is true that firefighters work fifty-six hours each week, forty percent longer than employees working a forty-hour week. But they also may accumulate vacation leave to a maximum of thirty twelve-hour days, or 360 hours. Employees working an eight-hour day may accumulate only thirty eight-hour days, or 240 hours. Thus, firefighters are allowed to accumulate fifty percent more vacation leave than other employees. It would be illogical to interpret the city's intention to be that firefighters could accumulate thirty twenty-four hour days, or 720 hours. This would allow firefighters to accumulate two hundred percent more vacation leave than other employees.

In interpreting the 1972 ordinance and determining the city council's intent, we have considered the circumstances and context in which the city council worked. We recognize that a "workday" was known to be a twenty-four-hour day for firefighters. But

---

1. For example, consider two city employees, a firefighter and a forty-hour-per-week employee, each of whom earns ten "workdays" of vacation leave per year. The firefighter who earns ten "workdays" (each "workday" being considered a twelve-hour period) would accumulate 120 hours. This firefighter (whose work schedule is twenty-four hours on followed by forty-eight hours off) works approximately 120 hours (or five shifts) during a two-week period. Thus, the 120 hours of vacation time earned for the year would afford the firefighter a two-week vacation. Ten "workdays" of vacation leave earned by the other employee for the year would generate eighty hours of accumulated vacation leave. This, of course, would afford the employee a two-week vacation.

the city clearly accounted for that fact and decided to redefine it as a twelve-hour workday for purposes of determining the vacation leave to which each employee would be entitled. Because the specific language of Section 5(d) of the ordinance is admittedly unclear, we have also considered the "contemporaneous construction" doctrine. Nonetheless, we are not convinced that the previous interpretation of Section 5(d) by the fire chief and by the city manager accurately reflects the city council's intent in enacting the 1972 ordinance. And we are not bound by their interpretation. See 4 McQuillin, supra, Sec. 12.177e. Although the city records and statements issued to the firefighters indicated that their vacation leave was accumulating beyond 360 hours, these representations cannot alter the substance of the 1972 ordinance. "Custom concerning the payment of compensation by a municipality cannot supersede the law." 4 McQuillin, supra, Sec. 12.175b.

The firefighters apparently argue that because the 1980 ordinance clearly defined "workday" as twelve hours for purposes of accumulating vacation leave, the 1972 ordinance must have meant something different. This argument is rejected. The 1980 ordinance simply reorganizes the sections and subsections of the 1972 ordinance, at least those portions concerning vacation leave. Nothing in the 1980 ordinance suggests that the city intended to change the maximum amount of vacation leave that may be accumulated by a firefighter. We conclude that both ordinances were intended to limit firefighters' maximum accumulated vacation leave to thirty twelve-hour days.

### III

Because the defendants relied on the 1972 ordinance in adjusting the firefighters' total accumulated vacation leave, our construction of the 1972 ordinance is fatal to all but one of the firefighters' claims for relief. First, we consider the breach of contract claim. In Part IV, infra, we discuss the remaining claims.

[2]   The breach of contract claim is based on each firefighter's express oral contract of employment with the city. The firefighters contend that they were promised benefits including vacation leave and that by periodically representing that their vacation leave had accumulated beyond 360 hours, the city was bound to credit those extra hours to each firefighter who had earned them.

The defendants respond by arguing that the firefighters had no contractual right to compensation because their compensation is fixed by ordinance. Therefore, according to defendants, any contract to allow accumulated vacation leave in excess of the limit set by the ordinance was ultra vires and void.

The legislature expressly authorized municipal corporations to fix salaries or other compensation or to approve and adopt pay plans to compensate city employees. N.C. Gen. Stat. Sec. 160A-162 (1982). Thus, the city could legally form contracts for the services of firefighters and offer a plan for accumulated vacation leave as a benefit under the contracts. *See* N.C. Gen. Stat. Sec. 160A-4 (1982) (Grants of power to cities should be construed broadly.). Therefore, although they may have been executed improperly, any contracts entered into by the city through its agents to compensate firefighters with accumulated vacation leave were not ultra vires the city. *See Town of West Jefferson v. Edwards*, 74 N.C. App. 377, 385, 329 S.E. 2d 407, 412-13 (1985). *See generally Rockingham Square Shopping Center, Inc. v. Town of Madison*, 45 N.C. App. 249, 253-54, 262 S.E. 2d 705, 708-09 (1980). The cases cited by defendant for the proposition that the city is not estopped to plead ultra vires to a contract that was beyond its power to make are inapplicable. *See, e.g., Moody v. Transylvania County*, 271 N.C. 384, 156 S.E. 2d 716 (1967); *Madry v. Town of Scotland Neck*, 214 N.C. 461, 199 S.E. 618 (1938); *Jenkins v. City of Henderson*, 214 N.C. 244, 199 S.E. 37 (1938).

Although the 1972 ordinance fixed the terms of the vacation leave benefit program, it did not, in itself, form a contract with the employees. *See* 4 McQuillin, *supra*, Sec. 12.177c. Once employment was offered and accepted under the compensation plan set out in the ordinance, however, its provisions become part of the contract. *See id.* The situation in the case at bar is distinguishable from an employee claiming a vested right under a statute which sets a policy regarding a schedule of future payments. *See, e.g., Dodge v. Board of Education of Chicago*, 302 U.S. 74, 82 L.Ed. 57, 58 S.Ct. 98 (1937). In the case at bar, the ordinance clearly contemplates that the vacation leave benefit program would assist in recruiting city employees and would become part of their contracts. *See, e.g., Indiana ex rel. Anderson v. Brand*, 303 U.S. 95, 82 L.Ed. 685, 58 S.Ct. 443 (1938). Moreover, the firefighters are not seeking to prevent the city from changing the benefits to be

earned in the future; they seek to recover for benefits allegedly already conferred on them by virtue of the ordinance and their contracts for services previously rendered.

The firefighters argue, and we agree, that the representations that more than 360 hours could be accumulated became supplementary employment contracts because they were inducements to continued employment. *See Chew v. Leonard*, 228 N.C. 181, 44 S.E. 2d 869 (1947); *Roberts v. Mills*, 184 N.C. 406, 114 S.E. 530 (1922); *Buchele v. Pinehurst Surgical Clinic*, 80 N.C. App. 256, 341 S.E. 2d 772 (1986). They each received personalized statements of compensation, signed by the fire chief and city manager, listing accumulated leave in both hours and dollars. Each form stated that it represented a summary of compensation earned and extolled the value of the benefits associated with the job.

The city had broad statutory authority to establish a program for accumulated vacation leave and to set its own limits on the maximum hours that could be accumulated. The 1972 ordinance limited the accumulation of firefighters' vacation leave to thirty twelve-hour days, or 360 hours. Part II, *supra.* The fire chief was given the authority to hire firefighters and offer to them the compensation package created by the city, but not to alter the terms of the ordinance regarding vacation leave. Therefore, the city argues, the firefighters' supplementary contracts for accumulated vacation leave in excess of 360 hours were unauthorized and invalid.

We conclude that this argument by the city is unavailable on the facts of this case. It is true that, generally, a municipality cannot be made liable for breach of an express contract for services when the official making the contract has exceeded his or her authority by entering into such a contract. 56 Am. Jur. 2d *Municipal Corporations* Sec. 504. And the city will not ordinarily be estopped to assert the invalidity of a contract made by an officer of limited authority when that authority has been exceeded. *Id.* Sec. 528.

> *However, such a contract may become binding and enforceable upon the corporation through the doctrine of estoppel* based upon the acts or conduct of officers of the

corporation having authority to enter into the contract originally, as by receiving the benefits of the contract, or other grounds of equitable estoppel. *A municipality cannot escape liability on a contract within its power to make, on the ground that the officers executing it in its behalf were not technically authorized in that regard, where they were proper officers to enter into such contracts.*

*Id.* at 585-86 (footnotes omitted and emphasis added).

Applying these principles to the case at bar, the city is estopped to assert the invalidity of the supplementary contracts for accumulated vacation leave in excess of 360 hours. Although neither the fire chief nor the city manager had the authority to extend the limit on accumulated vacation leave, they had the authority to offer an accumulated vacation leave benefit program and to enter into this type of supplementary employment contract. They were clearly the "proper officers to enter into such contracts." Furthermore, the city council, which did have the authority to extend accumulated vacation leave beyond 360 hours, accepted the benefits of the contracts. They city encouraged the continued employment of its firefighters by listing the monetary value of the total accumulated vacation leave (which exceeded 360 hours for the plaintiffs) and expressly challenged the firefighters to compare the city's compensation package with other employers' programs. It is also likely that some firefighters avoided taking vacation leave because, while it was still accumulating, its monetary value at termination was increasing. Had they known they could not accumulate more than 360 hours, they presumably would have either used their vacation time or requested approval under Section 5(d) of the ordinance to accumulate 60 workdays (720 hours) for a special purpose. Furthermore, the ordinance was unclear. It would be unfair to charge them with knowledge of our interpretation of the language in the ordinance, especially when the city officials authorized to administer that ordinance made the same error.

We hold that the plaintiff-firefighters' contracts were not ultra vires the city. And although they were unauthorized, the defendants are estopped to deny the validity of the contracts.

## IV

[3] The firefighters' remaining arguments are rejected. First, they claim that the passage of the 1980 ordinance impaired the obligations of contract in violation of Article I, Section 10 of the United States Constitution. This argument might have been valid had the city applied the 1980 ordinance retroactively to reduce the firefighters' rights under contracts binding on the city. Because the 1980 ordinance was not applied retroactively, the trial court properly granted summary judgment in favor of defendants on this claim.

The firefighters' second argument, under the Due Process clause of the Fourteenth Amendment to the United States Constitution and Article I, Section 19 of the North Carolina Constitution, also relies on the enactment and application of the 1980 ordinance (the alleged "taking" of the firefighters' property interest in the accumulated vacation leave in excess of 360 hours), without prior notice and an opportunity to be heard. Again, the city applied the 1972 ordinance, not the 1980 ordinance. Summary judgment for defendants was proper. Moreover, we do not believe the facts of this case would support a finding of an unconstitutional taking based on the adjustment of the firefighters' accumulated vacation leave records pursuant to the proper, albeit belated, interpretation of the 1972 ordinance. And none of the firefighters asserts that his employment has been terminated and that the city has wrongfully withheld payment for the contested vacation hours.

Having shown no deprivation of a right secured by the Constitution or laws of the United States, the firefighters' claim based on 42 U.S.C. Sec. 1983 must fail. We need not address their remaining assignments of error.

## V

We hold that the 1972 ordinance limited accumulated vacation leave to a maximum of 360 hours. Nonetheless, the actions of the fire chief, the city manager, and the city council in representing that vacation leave might accumulate beyond 360 hours, and in encouraging reliance and accepting the benefits thereof, formed supplementary employment contracts. The contracts were not ultra vires the city, and the city is estopped to assert the invalidity

of the supplementary contracts. Finally, we conclude that because the 1972 ordinance, rather than the 1980 ordinance, was applied to reduce the firefighters' accumulated vacation leave to 360 hours, the city neither impaired the firefighters' employment contracts nor denied the firefighters' rights to due process of law.

For the reasons set forth above, the entry of summary judgment in favor of the defendants on the breach of contract claim is reversed. The case is remanded to the trial court for further proceedings on the breach of contract claim. Summary judgment on all other issues is affirmed.

Reversed and remanded in part, and affirmed in part.

Judges WEBB and COZORT concur.