DILLON, Judge.
 

 *464
 
 Plaintiffs appeal from the trial court's order granting Defendants' motion to dismiss and entering final judgment dismissing Plaintiffs' claims for (1) breach of contract, (2) impairment of contract under Article I, Section 10 of the United States Constitution, (3) violations of Article I, Sections 18 and 19 of the North Carolina Constitution, and (4) specific performance.
 

 I. Background
 

 Plaintiffs are all employed by the State of North Carolina as magistrates.
 
 [1]
 
 The office of magistrate was created by constitutional amendment in 1962 as part of a comprehensive revision of the North Carolina court system spearheaded by Governor Luther H. Hodges and leaders of the North Carolina Bar Association.
 
 [2]
 
 The North Carolina Constitution
 
 *341
 
 provides that "[t]he General Assembly shall prescribe and regulate the ... salaries ... of all officers provided for in [ ] Article [IV]," N.C. Const. art. IV, § 21, which includes the salaries of magistrates.
 
 See
 
 N.C. Const. art. IV, § 10.
 

 The General Assembly enacted a salary schedule for magistrates in 1977. Since 1977, this salary schedule has been amended numerous times. The current version is codified in N.C. Gen.Stat. § 7A-171.1 (the "Salary Statute") and provides for the salaries of magistrates as follows:
 

 (1) A full-time magistrate shall be paid the annual salary indicated in the table set out in this subdivision.... Initial appointment shall be at the entry rate. A magistrate's salary shall increase to the next step every two years on
 
 *465
 
 the anniversary of the date the magistrate was originally appointed for increases to Steps 1 through 3, and every four years on the anniversary of the date the magistrate was originally appointed for increases to Steps 4 through 6.
 

 Table of Salaries of Full-Time Magistrates
 

 Step Level
 

 Annual Salary
 

 Entry Rate
 

 $35,275
 

 Step 1
 

 37,950
 

 Step 2
 

 40,835
 

 Step 3
 

 43,890
 

 Step 4
 

 47,550
 

 Step 5
 

 51,960
 

 Step 6
 

 56,900.
 

 N.C. Gen.Stat. § 7A-171.1(a)(1) (2015).
 

 On 1 July 2009, the General Assembly enacted legislation suspending the step increases under the Salary Statute for fiscal years 2009-2010 and 2010-2011, such that no magistrate could ascend to a higher step of the pay schedule during those years. The step increases were again suspended by the General Assembly in 2011 for the 2011-2013 fiscal biennium
 
 [3]
 
 and in 2013 for the 2013-2015 fiscal biennium. On 1 July 2014, however, the General Assembly fully reinstated the pay schedule and step increases.
 

 Plaintiffs filed suit against the State of North Carolina in May 2014, alleging that when they accepted employment as magistrates, the pay schedule set forth in the Salary Statute became a vested contractual right and that the State committed a breach of contract by suspending the step increases. Plaintiffs also asserted related constitutional claims, as well as claims for specific performance and declaratory judgment.
 

 Defendants filed a motion to dismiss pursuant to N.C. Gen.Stat. § 1A-1, Rules 12(b)(1), (2), and (6). The trial court granted Defendants' motion to dismiss, specifically concluding that Plaintiffs' complaint "failed to state a claim upon which relief can be granted[.]"
 
 See
 

 *466
 
 N.C. Gen.Stat. § 1A-1, Rule 12(b)(6) (2015). In its order, the trial court specifically concluded that N.C. Gen.Stat. § 7A-171.1 did not create any contractual right for the Plaintiffs to receive step increases, and therefore Plaintiffs' claims were barred by the doctrine of sovereign immunity. We agree, and therefore affirm the trial court's order granting Defendants' motion to dismiss.
 

 II. Analysis
 

 On appeal from a motion to dismiss under Rule 12(b)(6) of the North Carolina Rules of Civil Procedure, this Court conducts a
 
 de novo
 
 review of "whether the allegations of the complaint, if treated as true, are sufficient to state a claim upon which relief can be granted under some legal theory."
 
 [4]
 

 Bridges v. Parrish,
 

 366 N.C. 539
 
 , 541,
 
 742 S.E.2d 794
 
 , 796 (2013). Plaintiffs argue that their complaint did, in fact, state a claim for breach of contract entitling them to relief. Plaintiffs also contend that they are entitled to relief under the Contract Clause of the United States Constitution and the Law of the Land Clause of the North Carolina Constitution.
 
 [5]
 

 *342
 
 ] We address each of these arguments in turn.
 

 A. Principles Governing Contracts With the State
 

 It is well established in North Carolina that "an appointment or election to public office does not establish contract relations between the person[s] appointed or elected and the State."
 
 Smith v. State,
 

 289 N.C. 303
 
 , 307,
 
 222 S.E.2d 412
 
 , 416 (1976) ;
 
 see also
 

 Mial v. Ellington,
 

 134 N.C. 131
 
 ,
 
 46 S.E. 961
 
 (1903). Unless specifically prohibited by our Constitution, as a general rule, "[t]he Legislature may reduce or increase the salaries of such officers ... during their term of office, but cannot deprive them of the whole."
 
 Cotten v. Ellis,
 

 52 N.C. 545
 
 , 545 (1860). "[I]f the Legislature should increase the duties and responsibilities, or diminish the emoluments of the office, the officer must submit. Clearly any other rule would subordinate the public welfare to the interest of the officer. [The officer] takes subject to the power of the Legislature to change [the] duties and emoluments as the public good may require."
 
 State ex rel. Bunting v. Gales,
 

 77 N.C. 283
 
 , 285 (1877).
 

 *467
 
 The relationship between magistrates and the State is contractual in nature in one respect in that the magistrates are employees who provide labor in exchange for wages and benefits. And it is true that a statute enacted by our General Assembly can create a vested contractual right where the statute provides a benefit for work already performed. For instance, our Supreme Court has clearly stated:
 

 ... that when the General Assembly enacted laws which provided for certain benefits to those persons who were to be employed by the state and local governments and who fulfilled certain conditions, this could reasonably be considered by those persons as offers by the state or local government to guarantee the benefits
 
 if those persons fulfilled the conditions.
 
 When they did so, the contract was formed.
 

 Faulkenbury v. Teachers' and State Employees' Retirement System of North Carolina,
 

 345 N.C. 683
 
 , 691,
 
 483 S.E.2d 422
 
 , 427 (1997) (emphasis added). That is, the Supreme Court has concluded that if an employee fulfills certain conditions under a statute and thereby becomes entitled to a benefit, the benefit is considered "vested" and may not be taken from the employee by legislative action.
 
 Id.
 
 at 692,
 
 483 S.E.2d at 428
 
 .
 

 However, our Supreme Court more recently has reiterated the principle that there is a strong presumption that a statute does not create contractual rights.
 
 N.C. Ass'n of Educators v. State,
 

 368 N.C. 777
 
 , 785,
 
 786 S.E.2d 255
 
 , 262 (2016). Specifically, the Court stated as follows:
 

 The United States Supreme Court has recognized a presumption that a state statute is not intended to create private contractual or vested rights but merely declares a policy to be pursued until the legislature shall ordain otherwise. This presumption is rooted in the long-standing principle that the primary function of the legislature is to make policy rather than contracts. A party asserting that a legislature created a statutory contractual right bears the burden of overcoming that presumption by demonstrating that the legislature manifested a clear intention to be contractually bound. Construing a statute to create contractual rights in the absence of an expression of unequivocal intent would be at best ill-advised, binding the hands of future sessions of the legislature and obstructing or preventing subsequent revisions and repeals. We are deeply reluctant to limit drastically the essential powers of a
 
 *468
 
 legislative body by finding a contract created by statute without compelling supporting evidence.
 

 Id.
 
 at 786,
 
 786 S.E.2d at 262-63
 
 (internal marks and citations omitted).
 

 In the present case, we hold that Plaintiffs failed to meet their burden of showing that the Salary Statute creates a binding contract right for magistrates to receive a certain salary in the future
 
 for work performed in the future.
 
 Rather, the General
 
 *343
 
 Assembly is free to amend the Salary Statute so long as, in doing so, the General Assembly does not reduce a magistrate's salary for work already performed. The General Assembly's suspension of raises under the Salary Statute is much different than the legislation at issue in
 
 Faulkenbury,
 
 which reduced the amount of future pension benefits State employees would receive for work
 
 already performed. See
 

 Faulkenbury,
 

 345 N.C. at 691
 
 ,
 
 483 S.E.2d at 427
 
 ("[P]ensions for teachers and state employees [are] delayed salaries.").
 

 Although our Supreme Court concluded in the recent case of
 
 N.C. Ass'n of Educators
 
 that the Career Status Law itself did not create a contractual right to tenure, the Court did conclude that the individual teacher contracts contained an implied right to tenure for those who had already attained career status.
 
 N.C. Ass'n of Educators,
 

 368 N.C. at 788
 
 ,
 
 786 S.E.2d at 264
 
 (concluding that the repeal of the Career Status Law "unlawfully infringe[d] upon the contract rights of teachers
 
 who had already achieved career status
 
 " (emphasis added)). And our Court concluded that teachers who had not yet worked the requisite years to attain career status had no contractual right to receive tenure in the future by completing the requisite years of service, an issue which was not considered or otherwise disturbed by our Supreme Court.
 
 N.C. Ass'n of Educators,
 
 --- N.C.App. ----, ----,
 
 776 S.E.2d 1
 
 , 23-24 (2015). The magistrates here are much like the teachers in
 
 N.C. Ass'n of Educators
 
 who had not yet worked the requisite number of years to have a contractual right to career status. Here, a magistrate could not have a contractual right to receive a higher salary in a future year simply until the magistrate completed work in that future year. The actions of the General Assembly in suspending step increases
 
 for future work
 
 did not take away any benefit already earned by Plaintiffs, whereas in
 
 N.C. Ass'n of Educators,
 
 the successful plaintiffs had already worked the requisite years to earn career status.
 
 See
 

 Schimmeck v. City of Winston-Salem,
 

 130 N.C.App. 471
 
 , 475,
 
 502 S.E.2d 909
 
 , 912 (1998) (holding that a statute in force at the time plaintiff police officer began employment allowing disabled officers with five years of service to retire with benefits did not apply to plaintiff because the legislature amended the statute to provide for disabled officers to be transferred to other departmental duties prior
 
 *469
 
 to plaintiff's rights vesting with five years of service.) Accordingly, we hold that the trial court properly concluded that the General Assembly is free to alter the salary schedule before the work supporting each step increase is actually performed by a magistrate.
 

 Plaintiffs also argue that the pay schedule and the representations of agents and employees of the State of North Carolina regarding their pay became contractual terms because they relied on these representations by accepting their positions as magistrates. While our Court has previously held that representations of an employer regarding benefits of employment can form supplementary employment contracts, we also noted that the plaintiffs in that case were "not seeking to prevent the city from changing the benefits to be earned in the future[.]"
 
 [6]
 

 Pritchard v. Elizabeth City,
 

 81 N.C.App. 543
 
 , 552-53,
 
 344 S.E.2d 821
 
 , 826 (1986). Rather, they sought to recover "for benefits allegedly already conferred on them by virtue of the ordinance and their contracts for services previously rendered[.]"
 
 Id.
 
 at 553,
 
 344 S.E.2d at 826
 
 .
 

 In fact, if we were to find the presence of a contract in this case, it would still be true that even "[i]f an Act prescribing the duties and compensation of a public officer can in any case be held to be a contract, ... it is a contract
 
 subject to the general law,
 
 and therefore containing within itself a provision that such duties and compensation may be changed by any general law whenever the Legislature shall think a change required by the public good."
 
 State ex rel. Bunting v. Gales,
 

 77 N.C. 283
 
 , 286-87 (1877) (emphasis added);
 
 see also
 

 Mills v. Deaton,
 

 170 N.C. 386
 
 ,
 
 87 S.E. 123
 
 , 124 (1915) (noting that the
 
 *344
 
 legislature may, "within reasonable limits[,] diminish the emoluments of an office ... by reducing the salary or the fees, for the incumbent takes the office subject to the power of the Legislature to make such changes as the public good may require"). Because the Plaintiffs in this case did not have a vested right to every step pay increase, they had no contractual right for their future salaries as set forth in the Salary Statute.
 

 B. Constitutional Claims
 

 Because we have determined that Plaintiffs did not have a contractual right to the future pay schedule in the Salary Statute, Plaintiffs' arguments regarding the Contract Clause of the United States Constitution have no merit on appeal.
 
 See
 

 *470
 

 Bailey v. State,
 

 348 N.C. 130
 
 , 141,
 
 500 S.E.2d 54
 
 , 60 (1998) ;
 
 see also
 

 U.S. Trust Co. of N.Y. v. New Jersey,
 

 431 U.S. 1
 
 ,
 
 97 S.Ct. 1505
 
 ,
 
 52 L.Ed.2d 92
 
 (1977). Plaintiffs' remaining argument on appeal is for an unconstitutional taking claim based on the Law of the Land Clause of the North Carolina Constitution, which has been used in our State to allow "taking challenges on the basis of constitutional and common-law principles."
 
 Rhyne v. K-Mart Corp.,
 

 358 N.C. 160
 
 , 179,
 
 594 S.E.2d 1
 
 , 14 (2004) ;
 
 see also
 
 N.C. Const. art. I, § 19. For an unconstitutional taking to occur, Plaintiffs must have a recognized property interest for the State to take.
 
 See e.g.,
 

 Rhyne,
 

 358 N.C. at 179
 
 ,
 
 594 S.E.2d at 14-15
 
 . Although we recognize that vested contractual rights are property and are protected by the Law of the Land Clause of our Constitution,
 
 Bailey,
 

 348 N.C. at 154
 
 ,
 
 500 S.E.2d at 68
 
 , we reject Plaintiffs' taking argument because they have failed to establish the presence of a vested contractual right to the future pay schedule set forth in the Salary Statute.
 

 III. Conclusion
 

 We conclude that the Salary Statute does not create vested contractual rights for magistrates to receive future salary increases for work not already performed. Therefore, the General Assembly was free to suspend step increases under the Salary Statute. Accordingly, we hold that the trial court did not err in dismissing Plaintiffs complaint for failure to state any claim upon which relief could be granted, and we affirm the ruling of the trial court.
 

 AFFIRMED.
 

 Chief Judge McGEE and Judge DAVIS concur.
 

 [1]
 

 The class of Plaintiffs consists of all magistrates employed by the State of North Carolina at any time between 30 June 2009 and 1 July 2014, who had not, as of 1 July 2014, reached Step 6 of the pay schedule set forth in N.C. Gen.Stat. § 7A-171.1.
 

 [2]
 

 In a special message to the General Assembly in March 1959, Governor Hodges encouraged the North Carolina Bar Association to "take the lead in making a thorough and objective study of our courts," and to "show our State what should be done to improve the administration of justice in North Carolina." Special Message of Governor Luther H. Hodges to the North Carolina General Assembly, Article IV-Judicial Department (March 12, 1959),
 
 in Journal of the House of Representatives of the General Assembly of the
 

 State of North Carolina,
 
 at 209 (1959) (
 
 available at
 
 http://digital.ncdcr.gov/u?/p249901coll22,558990).
 

 [3]
 

 However, in 2012, the General Assembly granted magistrates and most other state employees a 1.2% pay increase and increased the entire salary schedule in N.C. Gen.Stat. § 7A-171.1 by 1.2%.
 
 2012 N.C. Sess. Laws 142
 
 , § 25.1A(b) & (g).
 

 [4]
 

 We consider the merits of Plaintiffs' contract claim because the trial court specifically dismissed their complaint pursuant to Rule 12(b)(6) for failure to state a claim upon which relief can be granted.
 

 [5]
 

 Plaintiffs did not address the trial court's dismissal of their remaining claims on appeal, and these claims are therefore deemed abandoned. N.C. R.App. P. 28(a).
 

 [6]
 

 In addition, the ordinance which created the benefit at issue in
 
 Pritchard
 
 "clearly contemplate[d] that the ... benefit program would assist in recruiting city employees and would become part of their contracts."
 
 Pritchard,
 

 81 N.C.App. at 552
 
 ,
 
 344 S.E.2d at 826
 
 .