DAVIS, Judge.
Plaintiffs, a class consisting of state troopers who were employed by the State of North Carolina between 1 July 2009 and 30 June 2014, appeal from the trial court's order dismissing various claims asserted by them in connection with their contention that the North Carolina General Assembly improperly suspended certain future salary increases that had been promised to them. After careful review, we affirm.
Factual and Procedural Background
This dispute arises as a result of several legislative enactments by the General Assembly between 2009 and 2013 that had the effect of suspending anticipated future salary increases for state troopers. When Plaintiffs were hired by the State, N.C. Gen. Stat. § 20-187.3 provided, in pertinent part, as follows:
Members of the Highway Patrol shall be subject to salary classes, ranges and longevity pay for service as are applicable to other State employees generally. Beginning July 1, 1985, and annually thereafter, each member of the Highway Patrol shall be granted a salary increase in an amount corresponding to the increments between steps within the salary range established for the class to which the member's position is assigned by the State Human Resources Commission, not to exceed the maximum of each applicable salary range.
N.C. Gen. Stat. § 20-187.3(a) (2015).
The pay schedule referenced in N.C. Gen. Stat. § 20-187.3 stated that Plaintiffs would reach " 'top base pay' in a range of $50,000 and above within six to seven years of employment." The schedule further provided that during their employment, Plaintiffs' pay would increase on a "regular, scheduled, graduated basis" in order for them to reach "top pay" within the six- to seven-year time frame.
Beginning in 2009, the General Assembly passed a series of legislative enactments suspending pay increases for state troopers due to a major economic downturn that affected North Carolina. In 2009, it suspended salary increases for the 2009-2011 fiscal biennium. 2009 N.C. Sess. Law 451, § 26.1A(c). In 2011, it suspended salary increases for the 2011-2013 fiscal biennium. 2011 N.C. Sess. Law 145, § 29.8(c). In 2013, it suspended salary increases for the 2013-2015 fiscal biennium, 2013 N.C. Sess. Law 360, § 35.8(d), but it later revoked the suspension as to the 2014-2015 fiscal year. 2014 N.C. Sess. Law 360, § 35.8(d).
On 17 March 2014, Plaintiffs filed a complaint against the State and various State officials in their official capacities (collectively the "State") alleging claims for breach of contract, violations of their rights under the state and federal constitutions, negligent misrepresentation, declaratory judgment, and specific performance. In their complaint, Plaintiffs also sought class certification pursuant to Rule 23 of the North Carolina Rules of Civil Procedure. On 18 August 2015, the trial court entered an order in Wake County Superior Court granting Plaintiffs' motion for class certification.
After Plaintiffs filed two amended complaints, the State filed a motion to dismiss pursuant to Rules 12(b)(1), (2), and (6) of the North Carolina Rules of Civil Procedure as to all claims asserted by Plaintiffs except for their claim for declaratory judgment. A hearing was held on 19 November 2015, and the trial court entered an order on 3 December 2015 containing the following conclusions of law:
1. In July 2009, the General Assembly suspended pay increases under section 20-187.3 for the 2009-10 fiscal biennium. 2009 N.C. Sess. Laws 451, § 26.1A.(c). The Legislature did the same for the 2011-13 and 2013-15 biennia, 2011 N.C. Sess. Laws 145, § 29.8(b), 2013 N.C. Sess. Laws 360, § 35.8(d), but later revoked the suspension effective 1 July 2014, 2014 N.C. Sess. Laws 100, § 35.7.
2. The Legislature is free to alter a schedule of future salary benefits before the work supporting those benefits is actually performed. E.g. , N.C. Ass'n of Educators, Inc. v. State , 776 S.E.2d 1 (N.C. Ct. App.), pet. for disc. rev. allowed , 775 S.E.2d 831 (N.C. 2015) ; Whisnant v. Teachers' & State Employees Ret. Sys. , 191 N.C. App. 233, 236, 662 S.E.2d 573, 575 (2008), cert. denied , 555 U.S. 1174 (2009) ; Pritchard v. Elizabeth City , 81 N.C. App. 543, 552-53, 344 S.E.2d 821, 826, disc. review denied , 318 N.C. 417, 349 S.E.2d 598 (1986). As such, no contract for these future benefits is formed at the beginning of employment.
3. The Complaint fails to state a claim upon which relief can be granted on Plaintiffs' claims for breach of contract, impairment of contract, violations of Article I, Sections 18 and 19 of the North Carolina Constitution, specific performance and negligent misrepresentation.
4. The Defendants did not move to dismiss the claim for declaratory judgment. The declaratory judgment claim does not appear to raise any legal issues that are not addressed above.
5. Pursuant to Rule 54(b) of the North Carolina Rules of Civil Procedure, the Court finds that there is no just reason for delay of entry of final judgment as to Plaintiffs' claims regarding (1) breach of contract; (2) impairment of contract under Article I, Section 10 of the United States Constitution; (3) violations of Article I, Sections 18 and 19 of the North Carolina Constitution ; (4) specific performance; and (5) negligent misrepresentation.
Based on these conclusions, the trial court granted the State's motion to dismiss Plaintiffs' claims for breach of contract, impairment of contract under Article I, Section 10 of the United States Constitution, violations of Article I, Sections 18 and 19 of the North Carolina Constitution, negligent misrepresentation, and specific performance pursuant to Rule 12(b)(6)[1] and stayed Plaintiffs' claim seeking a declaratory judgment. On 4 December 2015, Plaintiffs filed a notice of appeal to this Court. On 17 December 2015, the State filed a cross-appeal from the trial court's 18 August 2015 order allowing Plaintiffs' motion for class certification.
Analysis
I. Appellate Jurisdiction
As an initial matter, we note that the present appeal is interlocutory due to the fact that the trial court's order did not address Plaintiffs' claim for a declaratory judgment. "[W]hether an appeal is interlocutory presents a jurisdictional issue, and this Court has an obligation to address the issue sua sponte ." Duval v. OM Hospitality, LLC , 186 N.C. App. 390, 392, 651 S.E.2d 261, 263 (2007) (citation, quotation marks, and brackets omitted). "A final judgment is one which disposes of the cause as to all the parties, leaving nothing to be judicially determined between them in the trial court." Id. (citation omitted). Conversely, an order or judgment is interlocutory if it does not settle all of the issues in the case but rather "directs some further proceeding preliminary to the final decree." Heavner v. Heavner , 73 N.C. App. 331, 332, 326 S.E.2d 78, 80, disc. review denied , 313 N.C. 601, 330 S.E.2d 610 (1985).
"Generally, there is no right of immediate appeal from interlocutory orders and judgments." Paradigm Consultants, Ltd. v. Builders Mut. Ins. Co. , 228 N.C. App. 314, 317, 745 S.E.2d 69, 72 (2013) (citation and quotation marks omitted).
However, there are two avenues by which a party may immediately appeal an interlocutory order or judgment. First, if the order or judgment is final as to some but not all of the claims or parties, and the trial court certifies the case for appeal pursuant to N.C. Gen. Stat. § 1A-1, Rule 54(b), an immediate appeal will lie. Second, an appeal is permitted under N.C. Gen. Stat. §§ 1-277(a) and 7A-27(d)(1) if the trial court's decision deprives the appellant of a substantial right which would be lost absent immediate review.
N.C. Dep't of Transp. v. Page , 119 N.C. App. 730, 734, 460 S.E.2d 332, 334 (1995) (internal citations omitted).
Here, in its 3 December 2015 order, the trial court certified the order for immediate appeal pursuant to Rule 54(b). Therefore, we possess jurisdiction over Plaintiffs' appeal. See Feltman v. City of Wilson , 238 N.C. App. 246, 250, 767 S.E.2d 615, 619 (2014) (appellate jurisdiction existed where trial court resolved two of four claims asserted by plaintiff and certified case pursuant to Rule 54(b) ).
II. Dismissal of Plaintiffs' Claims
The standard of review of an order granting a Rule 12(b)(6) motion is whether the complaint states a claim for which relief can be granted under some legal theory when the complaint is liberally construed and all the allegations included therein are taken as true. On appeal, we review the pleadings de novo to determine their legal sufficiency and to determine whether the trial court's ruling on the motion to dismiss was correct.
Id. at 251, 767 S.E.2d at 619 (citation omitted).
"Dismissal is proper when one of the following three conditions is satisfied: (1) the complaint on its face reveals that no law supports the plaintiff's claim; (2) the complaint on its face reveals the absence of facts sufficient to make a good claim; or (3) the complaint discloses some fact that necessarily defeats the plaintiff's claim." Podrebarac v. Horack, Talley, Pharr, & Lowndes, P.A. , 231 N.C. App. 70, 74, 752 S.E.2d 661, 663 (2013) (citation omitted).
The Contracts Clause of the United States Constitution provides in relevant part that "No state shall ... pass any ... Law impairing the Obligation of Contracts[.]" U.S. Const. art. I, § 10. The Law of the Land Clause contained in Article 1, Section 19 of the North Carolina Constitution states, in pertinent part, that "[n]o person shall be ... in any manner deprived of his ... property, but by the law of the land." N.C. Const. art. I, § 19.
The resolution of this appeal hinges on the question of whether Plaintiffs possessed a vested right to the salary increases provided for in N.C. Gen. Stat. § 20-187.3(a) at the time of the challenged legislative enactments. A virtually identical issue was addressed by this Court several months ago in Adams v. State , --- N.C. App. ----, 790 S.E.2d 339 (2016). Therefore, it is necessary to closely examine our decision in Adams .
A. Adams v. State
In Adams , the plaintiffs were a group of North Carolina magistrates who alleged that upon hiring they had been promised future pay increases in accordance with a salary schedule set out as follows in N.C. Gen. Stat. § 7A-171.1(a)(1) :
1) A full-time magistrate shall be paid the annual salary indicated in the table set out in this subdivision. Initial appointment shall be at the entry rate. A magistrate's salary shall increase to the next step every two years on the anniversary of the date the magistrate was originally appointed for increases to Steps 1 through 3, and every four years on the anniversary of the date the magistrate was originally appointed for increases to Steps 4 through 6.
Table of Salaries of Full-Time Magistrates
?
Id. at ----, 790 S.E.2d at 341 (quoting N.C. Gen. Stat. § 7A-171.1(a)(1)(2015) ) (ellipsis omitted).
The plaintiffs brought suit against the State after the General Assembly suspended their salary increases from 1 July 2009 through 30 June 2014. Id. at ----, 790 S.E.2d at 341. In their complaint, they asserted claims for breach of contract, impairment of contract under the Contracts Clause of the United States Constitution, violation of the Law of the Land Clause of the North Carolina Constitution, and specific performance. Id. at ----, 790 S.E.2d at 340. The trial court granted the State's motion to dismiss the plaintiffs' claims, and the plaintiffs appealed to this Court. Id. at ----, 790 S.E.2d at 340.
In our opinion, we initially set out the following guiding principles governing contracts between public officers and the State:
It is well established in North Carolina that "an appointment or election to public office does not establish contract relations between the person[s] appointed or elected and the State." Smith v. State , 289 N.C. 303, 307, 222 S.E.2d 412, 416 (1976) ; see also Mial v. Ellington , 134 N.C. 131, 46 S.E. 961 (1903). Unless specifically prohibited by our Constitution, as a general rule, "[t]he Legislature may reduce or increase the salaries of such officers ... during their term of office, but cannot deprive them of the whole." Cotten v. Ellis , 52 N.C. 545, 545 (1860). "[I]f the Legislature should increase the duties and responsibilities, or diminish the emoluments of the office, the officer must submit. Clearly any other rule would subordinate the public welfare to the interest of the officer. [The officer] takes subject to the power of the Legislature to change [the] duties and emoluments as the public good may require." State ex rel. Bunting v. Gales , 77 N.C. 283, 285 (1877).
Id. at ----, 790 S.E.2d at 342.
We then discussed the distinction between vested contractual rights and rights that had not yet vested in the context of employment with the State.
The relationship between magistrates and the State is contractual in nature in one respect in that the magistrates are employees who provide labor in exchange for wages and benefits. And it is true that a statute enacted by our General Assembly can create a vested contractual right where the statute provides a benefit for work already performed. For instance, our Supreme Court has clearly stated:
... that when the General Assembly enacted laws which provided for certain benefits to those persons who were to be employed by the state and local governments and who fulfilled certain conditions, this could reasonably be considered by those persons as offers by the state or local government to guarantee the benefits if those persons fulfilled the conditions . When they did so, the contract was formed.
Faulkenbury v. Teachers' and State Employees' Retirement System of North Carolina , 345 N.C. 683, 691, 483 S.E.2d 422, 427 (1997) (emphasis added). That is, the Supreme Court has concluded that if an employee fulfills certain conditions under a statute and thereby becomes entitled to a benefit, the benefit is considered "vested" and may not be taken from the employee by legislative action. Id. at 692, 483 S.E.2d at 428.
Id. at ----, 790 S.E.2d at 342.
We noted, however, the existence of a presumption under North Carolina law that no contractual rights are created by statute.
[O]ur Supreme Court more recently has reiterated the principle that there is a strong presumption that a statute does not create contractual rights. N.C. Ass'n of Educators v. State , 368 N.C. 777, 785, 786 S.E.2d 255, 262 (2016). Specifically, the Court stated as follows:
The United States Supreme Court has recognized a presumption that a state statute is not intended to create private contractual or vested rights but merely declares a policy to be pursued until the legislature shall ordain otherwise. This presumption is rooted in the long-standing principle that the primary function of the legislature is to make policy rather than contracts. A party asserting that a legislature created a statutory contractual right bears the burden of overcoming that presumption by demonstrating that the legislature manifested a clear intention to be contractually bound. Construing a statute to create contractual rights in the absence of an expression of unequivocal intent would be at best ill-advised, binding the hands of future sessions of the legislature and obstructing or preventing subsequent revisions and repeals. We are deeply reluctant to limit drastically the essential powers of a legislative body by finding a contract created by statute without compelling supporting evidence.
Id. at 786, 786 S.E.2d at 262-63 (internal marks and citations omitted).
Id. at ----, 790 S.E.2d at 342.
We then determined that the plaintiffs had not demonstrated the existence of a contractual right to salary increases for future work.
In the present case, we hold that Plaintiffs failed to meet their burden of showing that the Salary Statute creates a binding contract right for magistrates to receive a certain salary in the future for work performed in the future . Rather, the General Assembly is free to amend the Salary Statute so long as, in doing so, the General Assembly does not reduce a magistrate's salary for work already performed. The General Assembly's suspension of raises under the Salary Statute is much different than the legislation at issue in Faulkenbury , which reduced the amount of future pension benefits State employees would receive for work already performed . See Faulkenbury , 345 N.C. at 691, 483 S.E.2d at 427 ("[P]ensions for teachers and state employees [are] delayed salaries.").
Id. at ----, 790 S.E.2d at 342-43.
We also explained that such a holding was fully consistent with our Supreme Court's recent decision in North Carolina Association of Educators .
Although our Supreme Court concluded in the recent case of N.C. Ass'n. of Educators that the Career Status Law itself did not create a contractual right to tenure, the Court did conclude that the individual teacher contracts contained an implied right to tenure for those who had already attained career status. N.C. Ass'n of Educators , 368 N.C. at 788, 786 S.E.2d at 264 (concluding that the repeal of the Career Status Law "unlawfully infringe[d] upon the contract rights of teachers who had already achieved career status " (emphasis added)). And our Court concluded that teachers who had not yet worked the requisite years to attain career status had no contractual right to receive tenure in the future by completing the requisite years of service, an issue which was not considered or otherwise disturbed by our Supreme Court. N.C. Ass'n of Educators , --- N.C. App. ----, ----, 776 S.E.2d 1, 23-24 (2015). The magistrates here are much like the teachers in N.C. Ass'n. of Educators who had not yet worked the requisite number of years to have a contractual right to career status. Here, a magistrate could not have a contractual right to receive a higher salary in a future year ... until the magistrate completed work in that future year. The actions of the General Assembly in suspending step increases for future work did not take away any benefit already earned by Plaintiffs, whereas in N.C. Ass'n of Educators , the successful plaintiffs had already worked the requisite years to earn career status. See Schimmeck v. City of Winston-Salem , 130 N.C. App. 471, 475, 502 S.E.2d 909, 912 (1998) (holding that a statute in force at the time plaintiff police officer began employment allowing disabled officers with five years of service to retire with benefits did not apply to plaintiff because the legislature amended the statute to provide for disabled officers to be transferred to other departmental duties prior to plaintiff's rights vesting with five years of service.) Accordingly, we hold that the trial court properly concluded that the General Assembly is free to alter the salary schedule before the work supporting each step increase is actually performed by a magistrate.
Id. at ----, 790 S.E.2d at 343.
We likewise rejected the plaintiffs' argument that they possessed a contractual right to the pay increases at issue in light of representations that had allegedly been made to them prior to hiring by State representatives.
Plaintiffs also argue that the pay schedule and the representations of agents and employees of the State of North Carolina regarding their pay became contractual terms because they relied on these representations by accepting their positions as magistrates. While our Court has previously held that representations of an employer regarding benefits of employment can form supplementary employment contracts, we also noted that the plaintiffs in that case were "not seeking to prevent the city from changing the benefits to be earned in the future[.]" Pritchard v. Elizabeth City , 81 N.C. App. 543, 552-53, 344 S.E.2d 821, 826 (1986). Rather, they sought to recover "for benefits allegedly already conferred on them by virtue of the ordinance and their contracts for services previously rendered[.]" Id. at 553, 344 S.E.2d at 826.
In fact, if we were to find the presence of a contract in this case, it would still be true that even "[i]f an Act prescribing the duties and compensation of a public officer can in any case be held to be a contract, ... it is a contract subject to the general law , and therefore containing within itself a provision that such duties and compensation may be changed by any general law whenever the Legislature shall think a change required by the public good." State ex rel. Bunting v. Gales , 77 N.C. 283, 286-87 (1877) (emphasis added); see also Mills v. Deaton , 170 N.C. 386, 87 S.E. 123, 124 (1915) (noting that the legislature may, "within reasonable limits[,] diminish the emoluments of an office ... by reducing the salary or the fees, for the incumbent takes the office subject to the power of the Legislature to make such changes as the public good may require"). Because the Plaintiffs in this case did not have a vested right to every step pay increase, they had no contractual right for their future salaries as set forth in the Salary Statute.
Id. at ----, 790 S.E.2d at 343-44.
Finally, we refused to accept the plaintiffs' argument that the suspension of their salaries constituted an unconstitutional taking based on the Law of the Land Clause of the North Carolina Constitution.
Because we have determined that Plaintiffs did not have a contractual right to the future pay schedule in the Salary Statute, Plaintiffs' arguments regarding the Contract Clause of the United States Constitution have no merit on appeal. ... Plaintiffs' remaining argument on appeal is for an unconstitutional taking claim based on the Law of the Land Clause of the North Carolina Constitution, which has been used in our State to allow "taking challenges on the basis of constitutional and common-law principles." Rhyne v. K-Mart Corp. , 358 N.C. 160, 179, 594 S.E.2d 1, 14 (2004) ; see also N.C. Const., art. I, § 19. For an unconstitutional taking to occur, Plaintiffs must have a recognized property interest for the State to take. See e.g., Rhyne , 358 N.C. at 179, 594 S.E.2d at 14-15. Although we recognize that vested contractual rights are property and are protected by the Law of the Land Clause of our Constitution, Bailey , 348 N.C. at 154, 500 S.E.2d at 68, we reject Plaintiffs' taking argument because they have failed to establish the presence of a vested contractual right to the future pay schedule set forth in the Salary Statute.
Id. at ----, 790 S.E.2d at 344.
In light of these determinations, we concluded that
the Salary Statute does not create vested contractual rights for magistrates to receive future salary increases for work not already performed. Therefore, the General Assembly was free to suspend step increases under the Salary Statute. Accordingly, we hold that the trial court did not err in dismissing Plaintiffs['] complaint for failure to state any claim upon which relief could be granted, and we affirm the ruling of the trial court.
Id. at ----, 790 S.E.2d at 344.
B. Application of Adams
Adams controls our decision in this appeal. Both Adams and the present case involve (1) a statute providing for a schedule of future salary increases for a particular group of State employees; (2) a decision by the General Assembly to suspend those salary increases for several fiscal biennia due to an economic downturn; and (3) a lawsuit brought by a group of the affected employees alleging breach of contract and violations of the Contracts Clause of the United States Constitution and the Law of the Land Clause of the North Carolina Constitution as a result of the General Assembly's actions.
The essence of Plaintiffs' argument is that the trial court erred "[b]y concluding that the Legislature is free to alter a schedule of future benefits before work supporting those benefits is performed, and that no contract for future benefits is formed at the beginning of employment[.]" However, Adams rejected that precise argument. Here, as in Adams , Plaintiffs have failed to demonstrate the General Assembly's actions resulted in a decrease in their salaries for work they had already performed . See Adams , --- N.C. App. at ----, 790 S.E.2d at 342-43.
It is well established that a panel of this Court must follow a decision by a prior panel on the same issue unless the prior opinion has been overturned. See In re Appeal from Civil Penalty , 324 N.C. 373, 384, 379 S.E.2d 30, 37 (1989) ("Where a panel of the Court of Appeals has decided the same issue, albeit in a different case, a subsequent panel of the same court is bound by that precedent, unless it has been overturned by a higher court."). Therefore, we are bound by our decision in Adams and are compelled to hold that Plaintiffs did not possess a vested right to the salary increases referenced in N.C. Gen. Stat. § 20-187.3 at the time of the General Assembly's enactments suspending those increases.
Moreover, Adams is consistent with longstanding caselaw from our appellate courts. See, e.g. , Whisnant v. Teachers' & State Employees' Ret. Sys. of N.C. , 191 N.C. App. 233, 236, 662 S.E.2d 573, 575 ("It is clear to this Court that the terms of the contract are established at the time the benefits vest.... Because petitioner's benefits did not vest prior to the time that the legislature altered the statutory benefit scheme, he failed to state any complaint upon which relief could be granted."), disc. review denied , 362 N.C. 513, 668 S.E.2d 783 (2008) ; Schimmeck v. City of Winston-Salem , 130 N.C. App. 471, 475, 502 S.E.2d 909, 912 (1998) ("[The state employee's] rights had not vested and thus there was no contractual obligation.").
Because Plaintiffs did not possess a contractual right to receive the increases referenced in N.C. Gen. Stat. § 20-187.3, they have no valid claims against the State based upon either a breach of contract theory or as an alleged violation of the Contracts Clause of the United States Constitution. Similarly, because Plaintiffs lacked such a contractual right, they had no recognized property interest that was "taken" by the State in violation of the Law of the Land Clause of the North Carolina Constitution.[2]
Conclusion
For the reasons stated above, we affirm the trial court's 3 December 2015 order.[3]
AFFIRMED
Report per Rule 30(e).
Judges CALABRIA and TYSON concur.

The trial court declined to rule on the State's alterative grounds for dismissal under Rules 12(b)(1) and (2).

Plaintiffs have failed to expressly make any arguments in their appellate brief as to the remaining claims dismissed by the trial court. Therefore, these issues are deemed abandoned. N.C. R. App. P. 28(b)(6) ( "Issues not presented in a party's brief ... will be taken as abandoned.").

Because we are affirming the trial court's 3 December 2015 order, we need not address the State's cross-appeal regarding the court's 18 August 2015 order allowing Plaintiffs' motion for class certification.